**SCHAFF, AS RECEIVER OF THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *v.* J. C. FAMECHON COMPANY.**

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 91.   Argued January 16, 1922.—Decided February 27, 1922.

A decision of a state court, denying a carrier's right to make a charge for refrigerator cars not provided for in tariffs filed at the stations where the shipments originated, and based wholly on an interpretation of the Interstate Commerce Act and the rules of the Interstate Commerce Commission, without questioning their validity, does not deny the validity of an authority exercised under the United States and is therefore not reviewable by writ of error under § 237, Jud. Code, as amended. P. 80.

Writ of error to review 145 Minn. 108, dismissed.

Error to review a judgment of the Supreme Court of Minnesota, which denied the right of a carrier to recover charges for refrigerator cars employed in interstate shipments.

*Mr. Charles W. Bunn* for plaintiff in error.

The court below held Circular No. 12, Western Trunk Lines, which was on file at the originating stations, not applicable to shipments destined by Southwestern Lines to Oklahoma and Texas, unless made applicable by Southwestern Lines Tariff, and that this tariff, while adopting Circular No. 12 by reference, was not valid as to the shipments in question because not filed at stations where those shipments originated.

The judgment is reviewable by writ of error. Act of September 6, 1916, 39 Stat. 726; *Northern Pacific Ry. Co. v. North Dakota,* 250 U. S. 135; *Alabama & Vicksburg Ry. Co. v. Journey,* 257 U. S. 111; *Buck v. Colbath,* 3 Wall. 334. Distinguishing, *New York Central & Hudson River R. R. Co. v. York & Whitney Co.,* 256 U. S. 406; *Yazoo & Mississippi Valley R. R. Co. v. Nichols & Co.,* 256 U. S. 540; *Northern Pacific Ry. Co. v. Solum,* 247 U. S. 477, 481; *Ireland v. Woods,* 246 U. S. 323, 328; *Champion Lumber Co. v. Fisher,* 227 U. S. 445, 450. This case meets the requirement laid down in *United States v. Lynch,* 137 U. S. 280, 285, and *Baltimore & Potomac R. R. Co. v. Hopkins,* 130 U. S. 210.

In the *Journey Case, supra,* the court could not have intended, without discussion, to hold that there was no jurisdiction on writ of error, for, like the *North Dakota Case, supra,* it clearly involved the validity of an authority exercised under the United States. As pointed out in *Dahnke-Walker Milling Co. v. Bondurant,* 257 U. S. 282, some cases may be subject both to writ of error and certiorari, under Jud. Code, § 237. It is difficult to conceive a case where is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States, the decision being against their validity (in which case writ of error lies under the first clause of § 237), which does not also fall under the class of cases described in the last clause of that section (in which case certiorari is the proper writ). Such cases are subject to both writs.

Cases of writ of error or appeal from the District of Columbia and the Territories under the Act of March 3, 1885, and under § 250, Jud. Code, are in point as defining the cases where writ of error lies under the Act of 1916. *Steinmetz* v. *Allen,* 192 U. S. 543; *McLean* v. *Denver & Rio Grande R. R. Co.,* 203 U. S. 38, 47; *Smoot* v. *Heyl,* 227 U. S. 518, 522.

As to the merits: The court, construing the Interstate Commerce Act, held it required filing of every tariff at the shipping station and that a tariff was invalid for any purpose if not so filed, though otherwise duly filed and published as required by the act.

The contrary rule has been repeatedly decided by this court. *Berwind-White Coal Mining Co.* v. *Chicago & Erie R. R. Co.,* 235 U. S. 371; *American Express Co.* v. *U. S. Horse Shoe Co.,* 244 U. S. 58; *Illinois Central R. R. Co.* v. *Henderson Elevator Co.,* 226 U. S. 441; *Texas & Pacific Ry. Co.* v. *Cisco Oil Mill,* 204 U. S. 449.

How far one circular or tariff may be incorporated into another by reference is a question for the Interstate Commerce Commission, and its discretion is controlling. As to this particular tariff, the Commission, after full hearings, has held that the car rental charge is properly referred to and therefore a part of the Southwestern Lines Tariff. *Hale-Halsell Grocery Co.* v. *Missouri, Kansas & Texas Ry. Co.,* 42 I. C. C. 491; 45 I. C. C. 523.

*Mr. Charles Burke Elliott,* for defendant in error, submitted.

MR. JUSTICE DAY delivered the opinion of the court.

Plaintiff in error, as receiver of the Missouri, Kansas & Texas Railway Company, brought suit against J. C. Famechon Company, in the Municipal Court of the City of Minneapolis, to recover for charges for rental of re-

frigerator cars used in shipping potatoes in 1914 and 1915 from various points in Minnesota over connecting lines to points in Oklahoma and Texas. The initial carriers were the Northern Pacific and Great Northern Railways, and the terminal carrier the Missouri, Kansas & Texas Railway Company, for which plaintiff in error was receiver. The terminal carrier received the potatoes, delivered them at their destinations, and collected from the shipper in excess of the regular line haul rate the sum of five dollars for the use of each refrigerator car in four shipments in 1915. Upon one refrigerator car, shipped in 1914, the excess was not collected. Famechon Company made claim against the railway company for an overcharge of five dollars on each of the four shipments so made in 1915. The railway company refunded twenty dollars to Famechon Company, for which sum the receiver brought suit, claiming the refund was made by mistake and through a misunderstanding of the tariff and schedules; he also brought suit to recover five dollars rental for the refrigerator car shipped in 1914.

Famechon Company, in its answer, put in issue the allegations of the complaint and pleaded a counterclaim for the rental paid on two cars shipped in 1916. In the Municipal Court of Minneapolis defendant in error had judgment for ten dollars with interest and costs, and the receiver for the railway company appealed to the Supreme Court of Minnesota, which affirmed the judgment. 145 Minn. 108. A writ of error was allowed bringing the case to this court.

From the facts found by the Supreme Court of Minnesota, and shown by evidence and stipulation, it appears that the established freight rate on potatoes in carloads from points of origin to points of destination, named in the pleadings, was contained in tariffs known as " Southwestern Lines' Tariffs ". These tariffs were subject to the " Southwestern Lines' Classifications, Exceptions and

Rules Circulars." Neither such circular nor the South-western Lines' Tariffs was on file or published at any of the stations of origin of shipment, but they were on file in certain designated offices of the Northern Pacific and Great Northern Railways in Minneapolis and St. Paul, and at various points in other States. At the time the shipments were made, Western Trunk Line Circular No. 12, specifically referred to in Southwestern Lines' Classifications, Exceptions and Rules, was on file at the points of origin of shipment and destination; and it was the only tariff issued by any of the carriers participating in the transportation of the shipments in question which contained a five-dollar rental provision for refrigerator cars; that circular was printed and filed with the Interstate Commerce Commission, and contained a rule to the effect that, when the shipper ordered a refrigerator or other insulated car to be heated by him or to move without heat, a charge of five dollars per car per trip would be made for use of car which would accrue to the owner thereof.

The Supreme Court of Minnesota recited the provisions of § 6 of the Interstate Commerce Act, 34 Stat. 586, requiring the filing of rates and charges with the Interstate Commerce Commission and the posting thereof at stations, and the rule of the Interstate Commerce Commission, adopted June 2, 1908, requiring the filing of rates and schedules, and held that the additional charges could not be collected under that statute and rule because neither the Southwestern Lines' Tariffs, nor the Southwestern Lines' Classification, Exceptions and Rules circulars making reference to Circular No. 12 were on file at the point of origin of shipment, and that there were no tariffs on file at such points to which shippers could refer to ascertain the rates of transportation.

The case is brought here by writ of error. We are of opinion that we cannot acquire jurisdiction by that

method under § 237 of the Judicial Code as amended by
the Act of September 6, 1916, c. 448, 39 Stat. 726.  Coun-
sel for plaintiff in error contends that a writ of error is
the proper method of review because there was drawn
in question the validity of an authority exercised under
the United States, and that the effect of the State Su-
preme Court decision was to deny such validity.  The ar-
gument is that the Interstate Commerce Act confers on
carriers the right to receive the revenues defined in the
tariffs, and is a command with penalties that carriers col-
lect those revenues, and that, as the decision turns on the
issue directly raised, and necessarily involved, whether the
tariff was or was not valid, there was drawn in question
the validity of an authority exercised under the United
States; that the question really decided by the Supreme
Court of Minnesota was not the interpretation of the
tariff, nor the extent or nature of the rights claimed under
it, but the validity of a tariff filed with the Interstate Com-
merce Commission.  But we cannot accept this conten-
tion.

We have recently had occasion to consider the meaning
of the phrase " validity of an authority " as used in § 237
of the Judicial Code as amended September 6, 1916.  *Jett
Brothers Distilling Co.* v. *Carrollton,* 252 U. S. 1, 6, and
cases cited.  We held that the validity of an authority was
drawn in question when the power to create it is fairly
open to denial, and is denied.  In that case we cited with
approval the same conclusion reached by this court in its
opinion rendered by Mr. Chief Justice Fuller in *Baltimore
& Potomac R. R. Co.* v. *Hopkins,* 130 U. S. 210.  We see
no occasion to depart from that definition of the phrase.

In the instant case the Supreme Court of Minnesota did
not question the federal power to enact the statute as to
rates with its requirements concerning the filing and post-
ing thereof, nor the authority of the Interstate Commerce

Commission to make the rule quoted in its opinion. What the court did was to so interpret the statute and rule as to render essential the filing of the tariffs at stations at the points of origin of shipment. Such interpretation, whether right or wrong, did not involve the validity of an authority exercised under the United States, and the review in this court should have been sought by a petition for writ of certiorari.

The writ of error must be

*Dismissed*