CHARLES T. SINCLAIR, SR., AND CHARLES T. SINCLAIR, JR., CO-PARTNERS, TRADING AND DOING BUSINESS UNDER THE FIRM NAME OF CARTHAGE FURNITURE COMPANY; M. M. WAY; MACKS' 5-10-25c STORES, INC., LEROY LEES' STORES, INC., FOR THEMSELVES AND ALL SUCH OTHER CREDITORS OF MOORE CENTRAL RAILROAD COMPANY, AND PERSONS INTERESTED IN THE CONTINUED OPERATION OF THE BUSINESS OF SAID COMPANY AS SHIPPERS OR OTHERWISE AS MAY MAKE THEMSELVES PARTIES TO THIS ACTION, v. MOORE CENTRAL RAILROAD COMPANY AND VAN B. SHARP AND LOUISE R. SHARP.

(Filed 19 December, 1947.)

**1. Appeal and Error § 14—**

Judgment was entered denying the appointment of a receiver upon the filing of the bond as provided by G. S., 1-503. Plaintiffs appealed. *Held:* Pending the appeal the lower court was *functus officio,* and an order entered pending the appeal appointing a permanent receiver upon application of parties who were permitted to come in and make themselves parties plaintiff, is void and of no effect.

**2. Receivers § 3—**

Plaintiffs who are parties at the time the court accepts bond filed pursuant to G. S., 1-503, and denies application for appointment of a receiver, are thereby estopped from further prosecuting their application for a

receiver, and the court is without authority to revoke such order at a subsequent term over objection of defendants.

**3. Appeal and Error § 40d—**

In proceedings in equity for the appointment of a receiver the findings of fact by the lower court are not binding on appeal.

**4. Appeal and Error § 14—**

The Superior Court, upon supporting findings of fact, has the power to adjudge that an appeal has been abandoned, and having so adjudged, has jurisdiction to proceed as though no appeal had been taken.

**5. Same: Receivers § 2—Where court adjudges that appeal had been abandoned, it may ratify prior orders entered while appeal was pending.**

Judgment was entered denying the appointment of a receiver upon the filing of bond as provided by G. S., 1-503. Plaintiffs appealed. Thereafter, on the application of other parties who were permitted to come in and make themselves parties plaintiff, order to show cause was issued and a permanent receiver appointed. Upon hearing on the receiver's report, the court authorized the receiver to issue certificates and to continue the operation of the business, and adjudge that the appeal had been abandoned. *Held:* It will be assumed that the orders were entered in proper sequence, and upon adjudication that the appeal had been abandoned, the court had jurisdiction to proceed in the action and the latter decree will operate as a ratification of the order permitting the joinder of the additional parties plaintiff and of the ineffectual order appointing the receiver.

**6. Receivers §§ 1, 7—**

The inherent power of a court of equity to appoint a receiver is not limited by the prevailing statutory provisions. G. S., 1-502; G. S., 55-147.

**7. Same—**

Ordinarily the appointment of a receiver is ancillary to some other equitable relief prayed in order to preserve and insure the proper disposition of the subject of litigation.

**8. Same—**

Some of the most common, but not exclusive, instances in which a receiver may be appointed are (1) to preserve, *pendente lite*, specific property which is the subject of litigation; (2) to tide an individual or corporation over a temporary financial embarrassment; (3) to prevent preferences and to insure the equitable distribution of the assets of an insolvent.

**9. Receivers § 7—**

Ordinarily the appointment of an operating receiver is limited to those instances where a temporary stay of creditor pressure is necessary to the preservation of the business, and a permanent operating receiver for financial embarrassment or impending insolvency will be appointed most commonly, if not exclusively, for railroads or other public utilities.

**10. Carriers § 1½—**

While a public utility such as a railroad retains its franchise, it owes to the State and to the public the duty of continuous operation.

**11. Carriers § 1½ :  Receivers § 7—**

Unless obligated to do so by its charter, a railroad should not be forced to continue operations in the public interests by the appointment of an operating receiver when such operation must be at continuing loss or the chance of profitable operation is nothing more than a gamble, and therefore the court before appointing an operating receiver should determine whether such operation will pay expenses and will tend to conserve rather than dissipate its assets.  In the instant case the circumstances are not such as to justify the appointment of a permanent operating receiver.

**12. Receivers § 8—**

As a general rule a receiver for a corporation will not be appointed at the instance of a simple contract creditor without a lien unless he has some peculiar equity or beneficial interest in the property of the corporation, except perhaps to prevent preferences and to assure equitable distribution of the assets of an insolvent.

**13. Receivers § 7:  Carriers § 1½ :  Utilities Commission § 1—**

Persons asserting unliquidated damages past and prospective resulting to them as consignees and consignors from the abandonment of the operation of a railroad may not in their individual capacities maintain an action to force continuing operation of the railroad by the appointment of a permanent operating receiver, since such damages, though possibly different in degree, are not different in kind than those sustained by the public generally, and since the power to require continuous operation in the public interest of the State is vested exclusively by statute in the Utilities Commission.  G. S., 62-30, *et seq.*

**14. Receivers § 7—**

Under G. S., 62-89, it would seem that the Legislature has withdrawn from the courts the right to authorize the issuance of receiver's certificates maturing more than two years after date of issue.

APPEAL by defendants from *Pittman, J.,* May Term, 1947, MOORE. Error.

Civil action in the nature of a creditor's bill for the appointment of an operating receiver for defendant railroad company.

The corporate defendant is a North Carolina corporation, chartered to operate as a common carrier of freight and express.  It has been in existence under various names since 1899.  It was originally chartered to operate a railroad from Cameron on the Seaboard Air Line Railway to Carthage to Halliston on the Norfolk Southern Railroad, approximately 20 miles.  The line from Carthage to Halliston, about 10 miles, was abandoned in 1930.  Operation thereof for years has been more or less unprofitable and it has found its way into the hands of receivers a number of times.

It was in receivership in February 1945 at which time all of its assets, franchise, etc., were sold under order of court and purchased by defendants Sharp for the sum of $4,250.  It was thereafter operated in a more

or less haphazard manner—its one engine from time to time being derailed for as much as 30 days—until 31 January 1947. On 1 February 1947, due to the dilapidated condition of the property, operation thereof was abandoned. Its one engine had been condemned by the Interstate Commerce Commission. It has no other rolling stock. Its substructure is in a condition of bad repair, at times being under water. Its small size 40 pound rail "has become bent and warped and unfit for proper use, causing (during its operation) frequent derailment of cars." The crossties "are greatly deteriorated and damaged." The supporting timbers of the trestles are in such condition that a person walking on the trestle will cause them and the rail situate thereon "to wobble and shake." Some of the rail joints are not bolted and "in numerous instances the rail had not been spiked to the crossties; never more than two bolts were used when four are required." At several places all the crossties have completely deteriorated and in several places along said railroad, at distances of eight or ten feet, there was only one crosstie supporting the rail. The Seaboard Air Line, the connecting line which has furnished the necessary rolling stock for the operation of the road, has placed an embargo on said road and will not permit any of its cars or engines to be used thereon, and it has declined to lease to defendant suitable rail for trackage. Defendant company is indebted to the Seaboard in a. large amount for· per diem use of cars; to defendant Sharp in the sum of approximately $28,000; and to various other creditors and claimants in smaller sums, so that it is now admittedly insolvent as a going concern.

The original plaintiffs herein named in the caption instituted this action, each alleging a debt in a small amount. The sole specific prayer for relief is for the appointment of an operating receiver with authority to issue and sell receiver's certificates, to restore the road for operation, and to operate the same. A temporary receiver was appointed and notice to show cause why said receiver should not be made permanent was served on defendants. On 30 December 1946, when the cause came on for ·hearing on the notice to show cause, the defendants tendered a good and sufficient bond to indemnify the plaintiffs and to pay such amounts as the plaintiffs may recover on their claims as set out in the complaint, as provided by G. S., 1-503. The court thereupon found that said bond complied "in all respects with the requirements of undertaking as set out in G. S. 1-503," and entered its order denying the application for a permanent receiver and dismissing the temporary receiver theretofore appointed. The plaintiffs excepted and appealed and thereafter served their case on appeal to this Court.

On 28 February 1947, M. M. Way, C. W. Short, and R. L. Comer filed a motion for an order making them parties plaintiff and requiring the defendants to appear and show cause why a permanent operating re-

ceiver should not be appointed. They aver in the motion that the defendant "has suspended its business, and unlawfully ceased operations and closed its offices and is no longer rendering or capable of rendering the services for which its charter and franchise was issued." They filed in connection therewith affidavit in which they assert claims for damages for failure to transport merchandise. Pittman, J., issued notice as prayed, returnable 6 March 1947. When the matter came on to be heard on the latter notice the court entered an order making Carl W. Short, R. L. Comer, H. M. Parker, and J. L. Currie Lumber Co. parties plaintiff and allowing them to file complaint, then tendered. They allege in their complaint the insolvency of the defendant and further in part as follows:

"That the line of railroad of defendant, Moore Central Railroad Company, extending from the Town of Carthage to the Town of Cameron is the only railroad operated from any point to said Town of Carthage, that the plaintiffs and other persons and corporations in the Town of Carthage and vicinity are wholly dependent upon this railroad line for outgoing and incoming freight in very large amounts during each year, and unless said line of railroad is adequately and successfully operated, the plaintiffs and a large number of business men in Carthage and its vicinity will be irreparably damaged." They pray that the court appoint a permanent operating receiver and authorize him to sell receiver's certificates for the purpose of obtaining funds with which to restore the defendant's railroad trackage and to operate the business thereof.

In its decree then entered the court appointed a permanent receiver with authority to operate said railroad in discharge of its public duty and further ordered "that the indemnifying bond filed by the defendants herein, indemnifying and guaranteeing payment of the claims of the first and original parties plaintiff to this action, be and the same is hereby withdrawn and cancelled and the defendants and their surety hereby discharged from any liability by reason of the execution thereon . . ." The defendants excepted to the order entered.

The record discloses a demurrer and motion to dismiss filed by defendants which was overruled. The date of the filing and the date of the order overruling the same is not disclosed. The record also discloses that just prior to the May Term, 1947, the defendants filed affidavit and motion, so termed, in which they object to the orders and decrees entered herein since appeal by the plaintiffs from the order entered 30 December 1946 and further object to a hearing upon the motion of the receiver for allowance to issue receiver's certificates. At the May Term, 1947, Pittman, J., overruled the motion and objection and proceeded to hear the matter on the report of the receiver. Defendants excepted.

On 10 May, 1947, the receiver filed his report in which he set forth fully the dilapidated condition of the defendant's physical property and the patent insolvency of the defendant and recommended that the court authorize the issuance of receiver's certificates in the sum of $40,000 and to use the proceeds derived from the sales thereof in reconstructing said railroad for operation. Affidavits were filed in support thereof and affidavits in rebuttal were offered by defendants.

Upon consideration of the evidence offered, Pittman, J., entered an order at the May Term, 1947, in which, after finding certain facts, he (1) authorized the receiver to issue $40,000 of receiver's certificates payable in fifteen years, bearing interest at the rate of 3% per annum; (2) authorized the receiver to continue the operation of said road; (3) required all creditors to present their claims in this cause; and (4) adjudged that the appeal entered by the plaintiffs 30 December 1946 has been abandoned. Defendants excepted and appealed.

*W. D. Sabiston, Jr., and M. G. Boyette for plaintiff appellees.*
*H. P. Seawell, Jr., and Jones & Jones for defendant appellants.*

BARNHILL, J. At the time Pittman, J., issued notice to the defendants to appear and show cause why a permanent operating receiver should not be appointed for the corporate defendant and on 6 March 1947, the return date of said notice, when an order appointing such receiver was entered, this cause was pending in this Court on the appeal of plaintiffs from the decree of 30 December 1946. The judge was at that time, in respect to this action, *functus officio,* and said order is void and of no effect. *Hoke v. Greyhound Corp.,* 227 N. C., 374, and cited cases.

For a further reason said order, in so far as it undertakes to strike the bond filed by defendants and release the surety thereon, is invalid. G. S. 1-503 was enacted for the benefit and protection of a defendant against whom an application for a receiver is prosecuted. It authorizes the judge in his discretion, upon the filing of the undertaking therein stipulated, "to refuse the appointment of a receiver." The undertaking was tendered, accepted, and approved by the court at the 30 December hearing and it, in its discretion, denied the application for a receiver. This, as to the original plaintiffs, was a substitute for the appointment of a receiver. Thereafter they were estopped by the order from further prosecution of their application for a receiver, and the court, of course, was without authority to revoke said order at a subsequent term, over the objection of defendants.

This brings us to the order entered at the May Term, 1947, exception to which raises the primary question sought to be presented on this appeal, to wit: Was it error for the court below to appoint a permanent

operating receiver for the railroad with authority to sell receiver's certificates payable fifteen years after date; to use the proceeds thereof to reconstruct the physical property of the corporate defendant and put it in condition for operation; and thereafter to operate the same as a going concern?

On this question the findings of fact made by the court below are not binding on us. *Coates v. Wilkes,* 92 N. C., 376; *Pearce v. Elwell,* 116 N. C., 595; *Bank v. Royster,* 194 N. C., 799, 139 S. E., 774. We must instead consider the record as a whole. On the facts therein appearing we are compelled to answer in the affirmative.

Barring the fact this action was pending in this Court at the time, the additional parties had the right to come in and make themselves parties plaintiff herein. The May Term order may be treated as a ratification thereof. Likewise it may be deemed that said order sufficiently ratifies the ineffective appointment of C. W. Short as receiver.

That the orders (1) making new parties and permitting them to plead, (2) ratifying the appointment of a receiver, and (3) adjudging that the former appeal had been abandoned and reinstating the cause on the civil issue docket were all incorporated in one decree presents no particular difficulty, for we may presume that such orders were in fact entered in proper sequence.

The judge, upon the facts found and the admissions made by the original plaintiffs, had the right to adjudge that the appeal herein had been abandoned. Having so adjudged, by and with the consent of the appellants, he had the right to proceed as if no appeal had been taken. *Hoke v. Greyhound Corp., supra,* and cases cited.

The power of the court to appoint a receiver in proper cases and upon a proper showing is not limited by prevailing statutory provisions. G. S. 1-502, G. S. 55-147. It is one of the inherent powers of a court of equity. *Jones v. Jones,* 187 N. C., 589, 122 S. E., 370; *Hurwitz v. Sand Co.,* 189 N. C., 1, 126 S. E., 171; McIntosh, N. C. P. & P., 999 *et seq.* Ordinarily it is not an end in itself but is only a means to reach some ultimate legitimate end sought in a court of equity and is ancillary to some other main equitable relief prayed. In brief, the purpose of a receivership is the preservation and proper disposition of the subject of litigation. 45 A. J., 16.

Some of the most common, but not exclusive, instances where the power is exercised are (1) to preserve, *pendente lite,* specific property which is the subject of litigation; (2) to tide an individual or corporation over a temporary period of financial embarrassment; and (3) as a State substitute for Federal bankruptcy, to prevent preferences and to assure the equitable distribution of the assets of an insolvent.

While the court has the power to, and sometimes does, appoint receivers with authority to continue the operation of a business, this power

should be exercised with great caution, and courts generally are averse to exercising it. *Booth v. Clark*, 58 U. S., 322, 15 L. Ed., 164. Except in cases where a person or corporation is temporarily financially embarrassed and the temporary stay of creditor pressure is essential to the preservation of the business, the power to appoint operating receivers is most commonly, if not exclusively, exercised in cases of financial embarrassment or impending insolvency of railroads and other public utilities. 45 A. J., 179.

While a public utility such as a railroad retains its franchise, it owes to the State and the public the duty of continuous operation. *Commonwealth v. L. & N. R. Co.*, 85 S. W., 712 (Ky.). This duty to State and public is a prime consideration in determining whether the continuing operation under receivership shall be ordered; that is, considerations of public interest are controlling. Even then a railroad in the hands of a receiver should not be compelled to operate at a continuing loss because of lack of traffic or the dilapidated condition of its rolling stock and roadbed unless cessation of its operation is contrary to its charter. Nor should such operation be authorized when the chance of success is nothing more than a gamble. Hence, before decreeing the operation by receiver the court should ascertain whether such operation will pay expenses and will be in the interest of conservation rather than conducive to dissipation of the property. 44 A. J., 432; 45 A. J., 182; Anno. 12 A. L. R., 292; Anno. 50 A. L. R., 159; *R. R. Com. of Texas v. R. R. Co.*, 258 U. S., 79, 68 L. Ed., 569.

The railroad here involved is for all practical purposes nonexistent as a going concern. It owns its right of way and franchise but to be operated it must be substantially rebuilt from the ground up. Plaintiffs seek, in fact, to resurrect and then to operate. Whether the revenues which may then be derived from its operation will be sufficient to pay operating expenses depends upon its ability to obtain for transportation substantially all the freight and express in and out of Carthage and the adjacent territory. In view of the modern-day truck transportation competition this is, to say the least, nothing more than a gamble.

But on this record this is not the most serious defect in the proceeding.

As a general rule a receiver for a corporation will not be appointed at the instance of a simple contract creditor without a lien unless he has some peculiar equity or beneficial interest in the property of the corporation. 45 A. J., 21; 53 C. J., 27; 2 Clark on Receivers, 855. The reason is this: The action on the debt is an action at law, involving no equity, whereas receivership proceedings are equitable in nature and receivers are appointed by the court in the exercise of its equity jurisdiction in furtherance of some equitable relief to which the applicant establishes a *prima facie* right.

This rule, perhaps, has no application to a bill in equity maintained by unsecured contract creditors as a substitute for bankruptcy to prevent preferences and assure, through court action, the liquidation and equitable distribution of the assets of an insolvent.

But the intervening plaintiffs do not occupy a position even as favorable as that of contract creditors. They assert unliquidated claims for damages and penalties arising out of the failure of the defendant to accept and transport merchandise, which refusal, on this record, necessarily occurred after the actual abandonment of operations. They allege also future irreparable damage which will accrue to them by the loss of transportation facilities and resultant depreciation of their property and the property of other citizens of the community.

It is a universally recognized rule that no private individual may complain because of consequential damages from the refusal to perform public or *quasi*-public duties, unless the damages which he sustains are peculiar and differ from those of other members of the public. *Beatty v. L. & N. R. R.*, 195 S. W., 487 (Ky.).

The losses sustained by intervening plaintiffs, large consignors and consignees of merchandise, by reason of the abandonment of the operations by the defendant, may exceed those sustained by their neighbors and may be more easily identified. Nonetheless, they arise out of the failure of the defendant to perform its *quasi*-public duty. The losses they sustain constitute a difference in degree but not in kind. *Bryan v. L. & N. R. Co.*, 238 S. W., 484, 23 A. L. R., 537; Anno. 23 A. L. R., 556; *Day v. Tacoma Ry. & Power Co.*, 141 P., 347; L. R. A. 1915 B, 547; *H. & L. Smelting & R. Co. v. Northern P. R. Co.*, 204 P., 370, 23 A. L. R., 546. Even if recoverable at law, they cannot be made the basis of an application for the appointment of a receiver.

Speaking to the subject in *Saylor v. Penn. Canal Co.*, 38 A., 598 (where a privately operated canal used as a public highway had been abandoned), the Court said:

"The business in which the plaintiff was engaged (the operation of a boat for the transportation of merchandise) was open to all persons using or desiring to use the canal for the purpose for which it was constructed. The privilege he exercised and enjoyed was not special or peculiar, nor was the injury he alleges he sustained by the neglect or failure of the company to repair or reconstruct. the highway it was required, as a purchaser, to maintain. The privilege was such as any person who chose to exercise it was entitled to, and the injury done by the abandonment of the highway was not to the plaintiff alone, but to him in common with the public. The difference, if any, was only in degree, and this will not sustain his suit." *H. & L. Smelting & R. Co. v. Northern P. R. Co., supra;* Anno. 23 A. L. R., 555.

With us the Utilities Commission has been vested with power to compel the operation of passenger and freight trains, G. S. 62-46, to inspect and require repair, G. S. 62-48, to compel efficient service, G. S. 62-74, to·require improvements and extensions of services, G. S. 62-37, to compel maintenance of facilities, G. S. 62-39, to supervise the services given, G. S. 62-30, and to authorize abandonment, G. S. 62-96. The Commission, "whenever in its judgment any public utility has violated any law," shall notify the Attorney-General and furnish him with the facts in respect to such violation. Thereupon he must "take such proceedings thereon as he may deem expedient." G. S. 62-63; *Colorado v. United States,* 271 U. S., 153, 70 L. Ed., 878.

Whether the last cited section, G. S. 62-63, requires the action to be maintained in the name of the State on the relation of the Attorney-General or Utilities Commission is not before us for decision. The exact title of the proceeding is not presently important. We will cross that bridge when we reach it. Suffice it to say that this and the other cited sections of the Code exclude the plaintiffs as proper parties plaintiff.

It follows that plaintiffs are not entitled to the appointment of a receiver as a remedy ancillary to their unliquidated claims for damages and penalties. If this is to be considered as an action in the public interest to compel the performance of a public duty, then it must be prosecuted by the official or agency whose duty it is to enforce the public right.

We do not mean to say, however, that plaintiffs may not apply for and obtain permission from the proper official or agency to prosecute an action with the same objective, as relators. 2 Elliott On Railroads, 3rd Ed., sec. 741. We merely decide that they may not do so in their own names as individual members of the public.

In this connection, however, it is a significant fact that although defendant has not operated its road for more than ten months the Commission has taken no action. Apparently it considers the facts such as to justify its acquiescence in the abandonment.

Furthermore, it may not be amiss to call attention to G. S. 62-89. It would seem that the Legislature by that Act has withdrawn from the courts the right to authorize the issuance of receiver's certificates maturing more than two years after the date of issue.

On this record the appointment of a permanent receiver with authority to reconstruct and operate the railroad belonging to the corporate defendant and to issue receiver's certificates must be held for error. However, the cause must be retained on the docket for further proceedings in respect to the several claims asserted by plaintiffs.

The cause is remanded to the end that a decree in conformance with this opinion may be duly entered.

Error and remanded.