Bandy v. A Perfect Fit For You, 2017 NCBC 56.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF CARTERET | 16 CVS 456 |

SHELLEY P. BANDY,

       Plaintiff,

STATE OF NORTH CAROLINA,

       Intervenor-Plaintiff,

   v.

MARGARET A. GIBSON, individually, and RONALD WAYNE GIBSON,

       Defendants,

A PERFECT FIT FOR YOU, INC.,

       Defendant and
       Intervenor-Defendant

**ORDER ON RECEIVER'S MOTION TO APPROVE PAYMENT TO DOUGLAS GOINES AS RECEIVER FOR PERFECT FIT FOR YOU, INC.**

THIS MATTER comes before the Court on Receiver Douglas Goines's ("Goines") Amended Motion to Approve Payment to Douglas Goines as Receiver for A Perfect Fit For You, Inc. ("Perfect Fit") ("Amended Motion"). Goines specifically moves the Court to approve his request for $115,628.55 in compensation from Perfect Fit for serving as its receiver during this litigation for the period May 16, 2016, through April 17, 2017. The Receiver makes the request pursuant to N.C. Gen. Stat. § 1-501 et seq. (hereinafter, all references to the General Statutes will be to "G.S.").

THE COURT, having considered the Amended Motion, Defendants Margaret A. Gibson and Robert Wayne Gibson's (collectively, "Gibsons") response to the Amended Motion, the exhibits filed with the Court, the proceedings to date in this matter, and other appropriate matters of record, FINDS and CONCLUDES that the

Amended Motion should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

A. *Factual and Procedural Background*

1.     Perfect Fit is a small, durable medical equipment supplier located in Morehead City, North Carolina. Plaintiff Shelley P. Bandy ("Bandy") claims that she is a 50% shareholder in Perfect Fit with Defendant Margaret A. Gibson ("Margaret"). The Gibsons deny that Bandy is a shareholder of Perfect Fit, and contend that Margaret is the sole shareholder of Perfect Fit.

2.     On May 16, 2016, Bandy initiated this action by filing a verified complaint in Carteret County Superior Court against Margaret and Perfect Fit.[1] In the verified complaint, Bandy alleged that Margaret reneged on an agreement that Bandy would be a 50% shareholder in Perfect Fit, and later transferred out of Perfect Fit and to the Gibsons millions of dollars in which Bandy has a 50% ownership interest. The verified complaint contained, *inter alia*, a motion for a temporary restraining order against the Gibsons and a motion for appointment of a receiver over Perfect Fit.

3.     On May 16, 2016, the Honorable Benjamin G. Alford, *ex parte*, issued a Temporary Restraining Order and an Order on Appointment of Receiver ("Receiver Order"). The Receiver Order appointed Goines as the receiver of "property and assets which are the subject of this action" and provided Goines with "full power to take possession of and manage [Perfect Fit's] business, books, and profits, less any

---

[1] On July 12, 2016, Bandy filed the First Amended Complaint that, *inter alia*, added as a Defendant Ronald Wayne Gibson.

necessary expenditures incurred in connection with the necessary operation of the property and business until a final adjudication of this cause may be had." (Receiver Order 1.) The Receiver Order did not state under what authority the Court was appointing Goines as receiver, and did not specifically reference G.S. §§ 1-501 or 502.

4. On June 15, 2016, after holding a hearing, Judge Alford issued an Order Granting Preliminary Injunction and Appointment of Receiver ("PI Order"). The PI Order froze all assets and funds in the possession of the Gibsons that were the result of corporate funds transferred out of Perfect Fit's bank account by Margaret. (PI Order 5–6.) With regard to the appointment of a receiver, Judge Alford ordered that "Goines shall continue as receiver, vested with full powers granted under statute to take possession of and manage the business, books, and profits of the corporation, less any necessary expenditures incurred with the necessary operation of the business during the pendency of this litigation or until further Order of this Court." (PI Order 6.) Again, the PI Order did not state under what authority the Court was appointing Goines as receiver.

5. On June 15, 2016, this matter was designated to the North Carolina Business Court. On June 16, 2016, the case was assigned to the undersigned by order of the Honorable James L. Gale, Chief Judge of the North Carolina Business Court.

6. Upon assuming the receivership position and reviewing Perfect Fit's books and records, Goines became concerned about the validity of the company's pre-receivership sales, almost all of which were paid for by North Carolina Medicaid. Goines retained third-party auditors to review Perfect Fit's Medicaid billing

practices. The audits established that essentially all of Perfect Fit's charges to Medicaid were not supported by adequate documentation as required by federal regulations. Goines concluded that Perfect Fit would likely need to repay the more than $12 million it had received from North Carolina Medicaid,[2] and reported the audit findings to the State of North Carolina.

7. Goines also concluded that if required to repay North Carolina Medicaid, Perfect Fit would not have sufficient assets and would be insolvent. On December 8, 2016, Goines moved the Court, pursuant to G.S. § 1-507.1 et seq., for an order appointing him as a receiver of an insolvent corporation with authority to attempt to retrieve assets transferred out of Perfect Fit and for a stay of the lawsuit while the parties worked with the North Carolina Attorney General's office to determine whether Perfect Fit would be obligated to return funds to North Carolina Medicaid. On January 19, 2017, the Court issued an order denying Goines's motion for authority to treat Perfect Fit as an insolvent corporation, but granted a stay of the lawsuit. The stay subsequently was extended by the Court to June 30, 2017.

8. The State has not yet concluded its investigation into Perfect Fit's Medicaid charges.

9. Since Goines was appointed receiver for Perfect Fit, it has continued to operate as an ongoing concern and has generated substantial revenue.[3] From May

---

[2] *See* 42 U.S.C. § 1320a-7k(d)(2).

[3] Goines has represented to the Court that Perfect Fit's Medicaid billing practices have been brought into compliance with the appropriate regulations.

16, 2016, to May 5, 2017, Perfect Fit's net receivables were $1,185,833.70 and its net disbursements $654,237.37. (Receiver's Br. Supp. Am. Mot. for Payment Ex. A.)

B. *The Motion*

10. Goines originally filed a Motion to Approve Payment ("Motion for Payment") on April 21, 2017, and attached in support, as Exhibit B, his firm's invoice for his services for the period May 16, 2016, through April 17, 2017. By order dated April 28, 2017, the Court ordered the parties to submit additional briefing on the issue of the Court's authority to award compensation to Goines, and ordered Goines to submit to the court "a breakdown of each of the time entries contained in the fees summary attached to the Motion for Payment as Exhibit B to show (a) time spent on non-legal tasks performed as part of the receivership, and (b) time spent on legal services performed as part of the receivership."

11. On May 15, 2017, Goines filed the Amended Motion. In the Amended Motion, Goines seeks compensation for his services as receiver since May 16, 2016.[4]

---

[4] None of the parties object to the Court awarding the Receiver compensation at this time based on his services to date. Neither applicable statutes nor appellate case law expressly address the issue of whether a court may award compensation to a receiver prior to the completion of the receiver's duties. Nevertheless, the Court of Appeals decision in *Kincheloe v. Leeds Group, LLC*, suggests that periodic payments of compensation to a receiver are proper. 2005 N.C. App. LEXIS 2099, at *3–4 (October 4, 2005) (noting that appellant was challenging numerous, periodic orders entered by the Superior Court awarding the receiver compensation for his services during the course of the receivership). In addition, it has been the practice of the North Carolina Business Court to award compensation to receivers on the basis of periodic requests to the court during the course of a receivership. *See, e.g.*, Order on Receiver's Fifth Application for Compensation and Reimbursement of Expenses of Receiver, *In re Southeastern Eye Center - Pending Matters*, No. 12 CVS 1648 (N.C. Super. Ct. September 26, 2016) (approving application for fees by receiver, an attorney, at $400 per hour and for Receiver's counsel at $250 per hour and authorizing Receiver to file additional applications for compensation and reimbursements as he deems appropriate); Order Appointing Receiver at 4, *Battles v. Bywater, LLC*, No. 14 CVS 1853 (N.C. Super. Ct. Dec. 11, 2014) (approving fees for co-receivers, two attorneys, at average rate of $225 per hour and

12.     In the Amended Motion, Goines seeks an award of $115,628.55 in compensation for his services as a receiver. Goines seeks $23,625.00 for attorneys' fees. Goines also seeks commission compensation of 5% of the total revenues and receivables and expense payments of Perfect Fit while he has been receiver, or $92,003.55 ($1,840,071.77 x .05), pursuant to G.S. § 1-507.9.

13.     With the Amended Motion, Goines filed Perfect Fit's ledger showing the company's transactions from May 16, 2016, through May 5, 2017 (Receiver's Br. Supp. Am. Mot. for Payment Ex. A,) Goines's Affidavit (*Id.* Ex. B,) and a spreadsheet detailing the work performed by Goines from May 16, 2016, through April 17, 2017. (*Id.* Ex. C.)

C. *Analysis*

14.     A receivership is an equitable remedy. *See Sinclair v. Moore C. R. Co.*, 228 N.C. 389, 395, 45 S.E.2d 555, 560 (1947). "Courts of equity have original power to appoint receivers and to make such orders and decrees with respect to the discharge of their trust as justice and equity may require." *Lambeth v. Lambeth*, 249 N.C. 315, 321, 106 S.E.2d 491, 495, (1959) (citing *Skinner v. Maxwell,* 66 N.C. 45, 47 (1872); *Lasley v. Scales*, 179 N.C. 578, 580, 103 S.E.2d 214, 215 (1920)); *see Lowder v. All Star Mills, Inc.,* 301 N.C. 561, 576, 273 S.E.2d 247, 256 (1981) ("[I]t is elementary that a Court of Equity has the inherent power to appoint a receiver, notwithstanding specific statutory authorization.").

---

thereafter requiring receivers to provide the Court with copies of their monthly bills for future compensation orders). Finally, the Court concludes that such periodic payments are permitted based on a trial court's broad authority to supervise receiverships.

15. Article 38 of Chapter 1, G.S. § 1-501 et seq., also gives trial courts the statutory authority to appoint receivers. Specifically, G.S. § 1-501 provides "[a]ny judge of the superior [ ] court with authority to grant restraining orders and injunctions has like jurisdiction in appointing receivers . . . except only a judge of the Superior Court Division has jurisdiction to appoint receivers of corporations," and a judge may, "in his discretion, retain jurisdiction and supervision of the original action, of the receivers appointed therefor and of any other civil actions pending in the same district involving the receivers . . . ."

16. G.S. § 1-502 provides "[a] receiver may be appointed . . . [b]efore judgment, on the application of either party, when he establishes an apparent right to property which is the subject of the action and in the possession of an adverse party, and the property or its rents and profits are in danger of being lost, or materially injured or impaired . . . ." A trial court, however, possesses the same inherent authority. *See Skinner*, 66 N.C. at 48 (North Carolina's statutory authority to appoint receivers "does not materially alter the equitable jurisdiction of our Courts upon this subject . . . . Where property is the subject of an action . . . the Court may appoint a receiver, when it seems just and necessary to keep the property in dispute from the control of either party until the controversy is determined.").

17. Trial courts are vested with broad authority to supervise receivers. *Lambeth*, 249 N.C. at 321, 106 S.E.2d at 495. Inherent in this authority is discretion to determine the compensation to be awarded for the receiver's services. *See King v. Premo & King, Inc.*, 258 N.C. 701, 712, 129 S.E.2d 493, 500 (1963); *Lowder v. All Star*

*Mills, Inc.*, 309 N.C. 695, 707, 309 S.E.2d 193, 201 (1983). "The fees and expenses of the receiver are part of the costs and expenses of the receivership, and should be paid as a cost and expense and not like debt to a creditor." *Kincheloe*, 2005 N.C. App. LEXIS 2099, at *23. "The receiver is also entitled to receive, in addition to reasonable compensation, attorneys' fees for tasks that require special legal skill and ability." *Id.* (citing *King*, 258 N.C. at 714, 129 S.E.2d at 502). Counsel fees should not be awarded for duties that do not require special legal skill, such as collecting assets of an estate. *King*, 258 N.C. at 714, 129 S.E.2d at 502.

18.    "In North Carolina, a receiver is entitled to reasonable compensation for his services." *Kincheloe*, 2005 N.C. App. LEXIS 2099, at *22.   A trial court's determination of the amount of a receiver's compensation is prima facie correct, and is subject to revision by the appellate courts only if "based on the wrong principle, or clearly inadequate or excessive." *King*, 258 N.C. at 712, 129 S.E.2d at 500.

1.    Request for compensation for attorneys' fees.

19.    Goines seeks an award of $23,625.00 for attorneys' fees. Goines contends that has he performed 94.5 hours[5] of legal work between May 16, 2016, and April 17, 2017. (Receiver's Br. Supp. Am. Mot. for Payment Ex. C.) Goines charged for his work as attorney at $250.00 per hour. None of the parties objects to Goines's hourly rate, and the Court concludes that the hourly rate is reasonable for an attorney of Goines's skills and experience.

---

[5] The spreadsheet shows a total of 162.9 hours of services performed by Goines for the receivership. (Receiver's Br. Supp. Am. Mot. for Payment Ex. C.) He has characterized 94.5 hours of that total as "Legal," 52.8 as "Non-legal," and 15.6 hours as "Both" legal and non-legal.  Goines does not seek attorneys' fees for the hours characterized as "Both." (*Id.*)

20. The Court must also scrutinize the records provided by Goines to determine whether the work for which he seeks attorneys' fees "require[d] special legal skill." *King*, 258 N.C. at 714, 129 S.E.2d at 502; *Kincheloe,* 2005 N.C. App. Lexis 2099, at \*29 ("The trial court conducted a careful analysis of the evidence, disapproved various entries, and made adjustments reallocating some entries as properly receiver compensation rather than legal fees.").

21. The Court has thoroughly reviewed the spreadsheet of time entries provided by Goines, and concludes that it is impossible to properly determine which tasks performed by Goines were legal work, and which were not. The spreadsheet contains approximately 200 entries, almost all of which are "block billed." The block entries consist of multiple tasks, separated by semi-colons, and followed by a total amount of time for the block entry. They do not provide the time expended on each individual task.

22. In addition, the cryptic task entries in the spreadsheet do not permit the Court to determine which tasks within a block entry required legal skill, and which, in the alternative, were non-legal tasks. In fact, one block entry may be characterized by Goines as "Legal" work and another, very similar, block entry characterized as "Non-Legal." For example, the entry for June 6, 2016, provides, in part, as follows:

> Bank emails re; check approvals; Trisha email re: office supplies; Teleconference with M. Parrish re: representation/meeting; Review of BB&T reply; Teleconference with Mrs. Lilly re; approving checks; Review of Trisha email re: check approvals; Preparation of questions/issues for meetings.

The spreadsheet provides that Goines charged 0.8 hours for these tasks, characterizing the work as "Non-legal." (Receiver's Br. Supp. Am. Mot. for Payment Ex. C, p. 5.) On the other hand, the entry for June 7, 2016, provides, in part, as follows:

> Shelley's email re: statement; Letter to Shelley; Teleconference with Mr. Cooper re: status and meeting; Review of email re: approving several checks; Conference with Stefan re: Computers; Send letter re: approving several checks; Review of emails from Mr. Cooper re: items for meeting.

Goines charged 0.9 hours for these tasks, characterizing them as "Legal."

23. Most of the other block entries in the spreadsheet are of a similar nature. The Court is not able to properly decide which tasks should be compensated as legal services and which should not. Goines's request for attorneys' fees should be DENIED.

24. The Court should make clear that the fault for the nature of the time entries is not entirely on Goines. The Receiver Order and PI Order did not provide any guidance to Goines as to how he would be compensated. The orders also do not provide the hourly rates he could charge, when or how often to apply to the Court for compensation, or what records Goines should maintain in support of his claims for compensation. Nevertheless, the Court is not able to make a separate award of attorneys' fees to Goines at this time. For the remainder of his service as receiver for Perfect Fit, as set forth below, Goines should keep task-based entries for his time spent performing legal services.

2. Request for commission under G.S. § 1-507.9.

25. In the Amended Motion, Goines also seeks payment of a 5% commission pursuant to G.S. § 1-507.9, which provides as follows:

> Before distribution of the assets of an insolvent corporation among the creditors or stockholders, the court shall allow a reasonable compensation to the receiver for his services, not to exceed five percent upon receipts and disbursements, and the costs and expenses of administration of his trust and of the proceedings in said court, to be first paid out of said assets. The court is authorized and empowered to allow counsel fees to an attorney serving as a receiver (in addition to the commissions allowed him as receiver as herein provided) where such attorney in behalf of the receivership renders professional services, as an attorney, which are beyond the ordinary routine of a receivership and of a type which would reasonably justify the retention of legal counsel by any such receiver not himself licensed to practice law.

26. As Goines recognizes, G.S. § 1-507.9 is contained within Article 38, part 2, which is applicable to receivers appointed to oversee insolvent or liquidating corporations. G.S. §§ 1-507.1 through 1-507.11. (Receiver's Br. Supp. Am. Mot. for Payment 4.) Nevertheless, Goines argues that the Court should apply G.S. § 1-507.9 based on the language in G.S. § 1-502 that provides "[t]he provisions of G.S. 1-507.1 through 1-507.11 are applicable, as near as may be, to receivers appointed hereunder." (*Id.* at 4–5.) Goines contends that the Court should treat Perfect Fit's revenues and receivables as "receipts" and its expenses as "disbursements" and award him a commission of 5% of the total, or $92,003.55. (*Id.* at 5, 7.)

27. Preliminarily, the Court notes that neither the Receiver Order nor the PI Order explicitly cites to G.S. § 1-502 as the authority under which Judge Alford

appointed Goines as receiver for Perfect Fit. While it might be logical to assume the judge was exercising the authority found in G.S. § 1-502 to appoint Goines to protect Perfect Fit's assets until a judgment could be reached in this lawsuit, the Court also had inherent authority to make the same appointment. *Skinner*, 66 N.C. at 48. Nonetheless, the Court will consider Goines's request for a commission under G.S. § 1-507.9.

28. The Gibsons argue that the language "as near as may be" in G.S. § 1-502 means that the provisions of Part 2 of Article 38, including G.S. § 1-507.9, should be applied to a receivership over a non-liquidating corporation only if it is appropriate to the receivership at issue. Since Goines was not appointed as receiver for Perfect Fit for the purpose of liquidating Perfect Fit or because the company was insolvent, G.S. § 1-507.9 should not be applied to Goines's request for compensation. (Gibsons' Br. Opp. Am. Mot. 4–5.)

29. The Gibsons contend that the commission payment provided for in G.S. § 1-507.9 is tailored to policy considerations applicable to receivers charged with overseeing the liquidation of an insolvent corporation for the benefit of creditors and shareholders. The Gibsons argue that permitting a commission of up to 5% on "receipts and disbursements" is intended to incentivize the receiver "find, collect, and distribute" all of the potential assets of an insolvent corporation and to "encourage[ ] the receiver to satisfy as much of the company's debt as possible before winding up its affairs." (Gibsons' Br. Opp. Am. Mot. 5.) The greater the amount of assets collected

and payments made to the creditors and shareholders, the greater the potential commission for the receiver.

30. The same policy is not squarely applicable to a receiver appointed to manage and operate an ongoing business pending final judgment in litigation. While encouraging the receiver to maximize the company's revenues might be an appropriate goal, a commission based on maximizing the company's expenses, or "disbursements," would provide the receiver with a perverse incentive harmful to the business he is managing. In this regard, the duties of a receiver for an insolvent or liquidating company and a receiver appointed to manage an ongoing concern diverge. In fact, although the Court need not address it at this time, the Gibsons argue that Goines has unnecessarily increased Perfect Fit's expenses through certain actions he has taken as receiver. The Court does not believe a receiver of an ongoing corporation should be rewarded for increasing its costs.

31. The Court concludes that it is not required to, and should not, apply G.S. § 1-507.9 to determine Goines's compensation in this matter where he is charged with managing and operating Perfect Fit as an ongoing concern until a judgment is entered in this case. Accordingly, the Goines's request for a commission should be DENIED.

3. <u>Reasonable compensation for Goines's services</u>.

32. Although the Court cannot determine an appropriate award of attorneys' fees based on the records available to the Court, and does not believe Goines is entitled to a commission, Goines is entitled to reasonable compensation for his services as a receiver. Goines has provided valuable services that have benefitted

not only Perfect Fit, but potentially the State of North Carolina and its citizens. The Court concludes, in its discretion, that reasonable compensation for Goines at this time should be determined by compensating Goines for the 162.9 hours of services he provided from May 16, 2016, to April 17, 2017. Although the Court does not believe it would be appropriate to compensate Goines for all of these hours at the $250.00 rate he charges for legal work, the records establish that he has provided both legal and non-legal services, and that he should be compensated at a blended hourly rate. The Court further concludes that a rate of $175.00 per hour would be appropriate and reasonable for the non-legal services Goines has provided as receiver. Blending this hourly rate with Goines's $250.00 hourly rate for legal services, the Court will compensate Goines for his work from May 16, 2016, through April 17, 2017, at a blended rate of $212.50 (($250.00 + 175.00) ÷ 2) per hour.[6] Accordingly, the Court awards $34,616.25 ($212.50 x 162.9 hours) to Goines as reasonable compensation for his services.

THEREFORE, the Amended Motion is GRANTED, in part, and DENIED, in part, as follows:

1.    The Court awards Goines compensation in the amount of $34,616.25 for his services as a receiver of Perfect Fit for the period May 16, 2016, through April 17, 2017.

2.    Goines's request to be awarded attorneys' fees for the period May 16, 2016, through April 17, 2017, is DENIED.

_____

[6] The blended rate of $212.50 is being used solely for purposes of compensating Goines for his services as receiver from May 16, 2016, through April 17, 2017.

3. Goines's request to be awarded a commission pursuant to G.S. § 1-507.9 is DENIED.

4. For the remainder of his service as receiver, Goines shall submit requests for compensation for his services as receiver no less frequently than every three months (beginning with compensation for the period April 18, 2017, through July 31, 2017). Requests for compensation shall be accompanied by separate summaries of the legal services for which Goines is requesting attorneys' fees, and the non-legal services for which he is requesting compensation. The summaries shall provide task-based entries stating the specific amount of time spent on each task, and shall not use block entries.[7] Goines will be compensated at a rate of $250.00 per hour for his legal services and at a rate of $175.00 per hour for non-legal services unless modified by further order of this Court.

SO ORDERED, this the 29th day of June, 2017.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
for Complex Business Cases

---

[7] To the extent Goines has not been keeping records of his time on a task basis prior to this Order, the obligation to provide task-based entries will commence with the issuance of this Order.