K. E. WOOD v. WOODBURY & PACE, INC.

(Filed 10 April, 1940.)

**1. Appeal and Error § 40a—**

The Supreme Court will not review conflicting affidavits in order to find a fact necessary to support a judgment, but in the absence of a request by appellant for findings of fact in the trial court, will presume that the court found the facts necessary to support its judgment.

**2. Receivers § 9—Refusal of petition that receiver abandon property pledged and turn it over to secured creditor for liquidation, held not error.**

The total assets of the insolvent corporation consisted of warehoused lumber, and the warehouse receipts had been pledged as security for loans. There was conflict in the allegations and affidavits as to whether any equity in the property existed over and above the secured debts for the benefit of general creditors. The court denied the petition of a secured creditor that the receiver abandon the property pledged to it and that it be allowed to liquidate same. *Held:* It will be presumed on appeal that the court found facts necessary to support its judgment, and the denial of the secured creditor's petition will not be disturbed.

**3. Receivers §§ 12c, 14—Where receiver manages and sells pledged property, the proceeds of sale are chargeable with proportionate costs of receivership.**

While it is the duty of a receiver to preserve priorities, and while priorities are unaffected by receivership, where the receiver manages, cares for and sells the pledged property for the benefit of the secured creditors, the cost of receivership, including the allowance to the receiver for his services, take precedence over the lien, and it is proper for the court to order that upon the sale of the pledged property by the receiver that he turn over 80% of the proceeds to the secured creditors and retain 20% to pay expenses of receivership allowed by the court, any balance remaining to be held subject to future orders.

APPEAL by Reconstruction Finance Corporation (hereinafter called RFC), creditor of defendant Woodbury & Pace, Inc., in receivership, from *Pless, J.,* at Chambers in Marion, 11 November, 1939. From YANCEY.

*Whitlock, Dockery & Shaw for RFC, appellant.*
*Weaver & Miller for W. H. Woodbury, receiver, appellee.*

SCHENCK, J. This is an appeal by a creditor from judgment of Pless, resident judge, authorizing and directing the receiver to sell and liquidate certain warehoused lumber, the warehouse receipts covering which had been pledged with RFC and three banks as security for certain debts.

RFC, appellant, contends that the court should have ordered the receiver to abandon the lumber and turn it over to it for liquidation, and in no event should the court have authorized or directed any expense to be paid out of the proceeds from the sale of the lumber.

The receiver, appellee, contends that the court correctly ordered the sale of the lumber for liquidation under the authority and supervision of the court, and that the proceeds from such sale should bear the direct and incidental expense of handling, selling and caring for said lumber.

The receiver was appointed and authorized to conduct the business of the defendant corporation, Woodbury & Pace, Inc., without objection from the appellant or anyone else. Thereafter, the receiver, by petition used as an affidavit, brought to the court's attention the following facts: (1) That since his appointment as receiver on 12 September, 1939, he had been unable to liquidate the assets of the defendant corporation. (2) That the sole assets of said corporation consist of lumber on hand and warehoused, and that the warehouse receipts on all of said lumber are held as collateral security by the RFC and three banks. (3) That the banks take the position that they want their warehouse receipts handled in the same manner as the receipts of the RFC are handled, and that the RFC takes the position that it will not release any of the warehouse receipts held by it until the indebtedness due it is paid in full, or unless the entire funds derived from the sale of any lumber covered by said receipts is turned directly over to it. (4) That without the warehouse receipts it is impossible to liquidate the lumber in the usual course of business, and that before the moneys received from the sale of lumber are turned over to the holders of the warehouse receipts certain charges and expenses must be paid, such as storage, insurance, transportation, bookkeeping and other administrative expenses. (5) That by reason of the foregoing the business of the defendant corporation is effectively stalemated and expenses are accumulating. (6) That if the lumber can be liquidated in the usual course of business there is reasonable grounds to believe that all of the secured creditors can be paid in full, and some amount realized for the unsecured creditors. (7) That upon a forced sale, or a sale of the lumber as a whole, an amount sufficient to pay the secured creditors would not be realized, and that the interest of the

secured as well as that of the unsecured creditors make it imperative that the receiver be authorized to sell the lumber in the normal course of business.

Upon the foregoing facts the receiver suggested two methods by which the sale of the lumber could be best handled with safety to the secured creditors, namely, (1) by an order requiring the holders of the warehouse receipts covering the lumber to deposit them with a custodian, where they could be immediately available to the receiver upon making sales of lumber, and as such sales were made the receiver could pay the expenses incident thereto, and administrative expenses authorized by the court, and remit the balance to the holders of the warehouse receipts, so that at no time the receiver would have on hand receipts or money in excess of his bond; or (2) in the event the holders of the warehouse receipts refused to deliver them to the receiver, or to the custodian, that the warehouse company be authorized and directed to deliver the lumber to the receiver, on court order, without presentation of receipts, and that the interest of the holders of the receipts be protected as above suggested.

The RFC filed answer and cross petition directly controverting only one material allegation of the receiver's petition, namely, that there is any equity in the lumber above the indebtedness due the creditors secured thereby; and requested that the RFC be permitted to proceed with the collateral to the loan it made to Woodbury & Pace, Inc., consisting of warehouse receipts for said lumber, as the owner thereof.

After hearing upon the petition of the receiver and the answer and cross petition of RFC, appellant, the court entered an order "That all of the warehouse receipts of the Lawrence Warehouse Company, of Chicago, Illinois, covering lumber stored in its field warehouse at Pensacola, N. C., belonging to Woodbury & Pace, Inc., or its receiver, W. H. Woodbury, be and the same are hereby impounded and the holders of said warehouse receipts, as pledgees, to wit: Reconstruction Finance Corporation, The Bank of Spruce Pine, Spruce Pine, N. C., and the receipts held by the Bank of Black Mountain, Black Mountain, N. C., for itself and its trustee for the Citizens Bank of Marshall, Marshall, N. C., individually and collectively, are authorized, ordered and directed to forward said receipts to First National Bank, Asheville, North Carolina.

"And it is further ordered that the lumber covered by said warehouse receipts is hereby authorized and directed to be released from said receipts by said Lawrence Warehouse Company upon there being exhibited to said Warehouse Company, or its representative, a statement by W. H. Woodbury, receiver of the subject defendant, showing sale at a price of not less than current New York market, as quoted

in the New York Lumber Journal, or that may be approved in writing by Mr. J. E. Fulghum, of Asheville, N. C.

". . .

"And be it further ordered that W. H. Woodbury, receiver, when he sells said lumber at the price, as hereinbefore determined, shall receive cash upon delivery of said lumber, or, if he sells the same on credit, the terms and credit risk thereof shall be approved by said W. H. Woodbury, receiver, and J. E. Fulghum, jointly, in writing.

"And be it further ordered that all moneys received from the sale of said lumber covered by said warehouse receipts . . . shall be held by the said W. H. Woodbury, receiver, and that from the moneys so received from the sale of said lumber, the said W. H. Woodbury, receiver, shall, within fifteen days after the funds covering the sale of said lumber are available, remit to the holders of the warehouse receipts . . . 80% of the net amount so received, covering the lumber sold who deposited them in accordance with this order.

"From the remaining 20%, payment of expenses in connection with the sale and receivership shall be made in accordance with the former orders of the court and the balance held by the receiver for future orders of the court.

". . .

"And it is further ordered and decreed that the funds received by said receiver from the proceeds of lumber sold, as hereinbefore ordered, shall retain their character as lumber and shall be subject to the pledge of the warehouse receipts formerly covering the same, in the same manner as if the said lumber had not been sold, and subject to this order and to further orders of the court."

To this order the RFC, appellant, excepted and appealed to the Supreme Court, assigning as error (1) the refusal of the court to grant RFC's motion that the receiver be directed to abandon any interest he might have in the collateral pledged as security to it, and (2) the impounding RFC's collateral and otherwise dealing with the same without making proper provision for the payment of the proceeds to such corporation.

The first question involved and presented in the appellant's brief is: "Did the court below err in not granting RFC's cross motion or petition requesting an abandonment by the receiver of his equity, if any, in the warehouse receipts pledged to it?"

The reason advanced for the first assignment of error is that there is no finding of fact with respect to whether any equity existed in the receiver in the lumber covered by the warehouse receipts pledged to RFC. It does not appear from the record that the appellant requested such a finding, and, under the decisions of this Court, where the correct-

ness of the court's ruling is dependent upon facts *aliunde* or *dehors* the record a request should be made that the facts be found, otherwise it will be presumed that they were determined in support of the judgment. *Banking Co. v. Bank,* 211 N. C., 328, and cases there cited. The allegations and affidavits in the record bearing upon the question of whether there was any equity in the receiver in the lumber covered by the warehouse receipts are conflicting, and "we do not consider affidavits for the purpose of finding facts ourselves," *Gardiner v. May,* 172 N. C., 192, since it is incumbent upon the appellant to request such findings below. *Holcombe v. Holcombe,* 192 N. C., 504; *Lumber Co. v. Buhmann,* 160 N. C., 385. This question must be answered in the negative.

The second question involved and presented in the appellant's brief is: "Did' the court below err in signing the order of November 11, 1939, in (a) impounding RFC's pledged warehouse receipts and further dealing with the lumber covered thereby as is provided in said order, and (b) in providing for payment of expenses, etc., other than those benefiting RFC, from funds to be received from the sale of lumber covered by warehouse receipts pledged to RFC prior to payment in full of the obligation secured thereby?"

The lumber, covered by the warehouse receipts ordered impounded, constituted the entire assets of Woodbury & Pace, Inc., to come into the hands of the receiver, and the impounding of such receipts under the conditions fixed by the order made possible a practical way of handling said assets and enabled the receiver to continue the business of the corporation as a going concern, and at the same time protected the interest of those creditors whose debts were secured thereby, as well as the interest of the unsecured creditors.

That portion of the order providing for the payment of certain expenses from 20% of the amount derived from the sale of the lumber was in accord with the practice in this jurisdiction. While the general rule is that a receiver receives all property impressed with all existing rights and equities of creditors and that any liens remain unaffected by the receivership, and that it is as much the duty of the receiver to protect valid preferences and priorities as it is to make just distribution among general creditors, "there is no question but that a court of equity which has appointed a receiver to take charge of property and to care for and protect the same may decree the charges therefor as a prior claim and lien against the property paramount to all mortgages or other liens or encumbrances. The property becomes chargeable with the necessary expenses incurred taking care of and saving it, including the allowance to the receiver for his services. He is the officer and agent of the court and not of the parties; and it is a right of the court essential to its own efficiency in the protection of things so situated to keep them

under its control, until such expenses and allowances are paid or secured to be paid. Proper attorneys' fees, like other expenses of administration, take precedence over preëxisting liens on the funds; but they can be ascertained and allowed only by the court that appointed the receiver." 23 R. C. L., 109.

Ordinarily, it is the rule with us, when a receivership inures to his benefit, to hold that a lienholder should pay a fair share of the administrative expenses, where the receiver has managed, cared for and sold the encumbered property. *Kelly v. McLamb,* 182 N. C., 158; *Bank v. Country Club,* 208 N. C., 239.

The judgment of the Superior Court is
Affirmed.