ERNEST KING, JR. v.
PREMO & KING, INC. AND BANK OF MONTGOMERY.

(Filed 27 February 1963.)

**1. Receivers § 13;   Appeal and Error § 3—**

The allowance of cost of administration and attorney's fees affects a substantial right of the creditors in that assets available for payment of their claims are reduced *pro tanto*, and such allowance is reviewable by the Supreme Court.

**2. Receivers § 13—**

The allowance by the lower court of fees to the attorney for the receiver is *prima facie* correct, and the Supreme Court will not alter or modify the same unless the allowance is based on wrongful principle or is clearly inadequate or excessive.

**3. Same—**

A receiver is not entitled to five per cent upon receipts and disbursements but is entitled to a reasonable compensation not to exceed five per cent.

**4. Same—**

An amount allowed as fees to an attorney for a receiver may not be enlarged to cover compensation for ministerial functions required to be performed by the receiver in contacting purchasers, showing property for sale, accounting and bookkeeping, etc., but such allowance must be based upon services requiring special legal skill performed by the attorney.

**5. Same—**

In consideration of the moderate amounts derived from the liquidation of the assets of the insolvent, the inadequacy of the assets to pay even secured creditors in full, and the absence of indication of any litigation or dispute in the collection of the assets, or the amount of professional time necessarily required for the services of the receiver's counsel, the allowance by the Superior Court of counsel fees to the receiver's attorney in this case *is held* excessive and is reduced by order of the Supreme Court.

**6. Receivers § 12—**

Where the insolvent is indebted to creditors on interest-bearing obligations secured by a lien on specific chattels, and the chattels are sold for a sum in excess of the principal of the debt secured, the creditor is entitled, as far as his security suffices, to interest to the time of the order of disbursement, and not merely to the date of the appointment of the receiver.

**7. Receivers § 13—**

Where the receiver sells the insolvent's real property which is subject to a deed of trust, it is error for the receiver to charge the *cestui* only with the cost of selling the real property and the amount necessary to pay tax liens against the land, but the costs of sale and the tax liens should be included in the cost of administration and then the *pro rata* share of the administrative expenses should be charged against the *cestui*, and order of the lower court approving the receiver's disproportionate charge of administrative expenses will be reversed on appeal of another creditor even though the order will inure *pro tanto* to the benefit of creditors who did not appeal.

**8. Assignments § 4;  Receivers § 5—**

Where a factor contends that prior to the receivership it had paid full consideration for all accounts assigned to it by the account creditor prior to insolvency and that actual notice of the assignment was given to the account debtors on the face of the original invoices, G.S. 44-80(2), the receiver's report should find the facts with regard to the factor's contentions in order to determine the factor's right to proceeds of the accounts receivable free from the costs of the receivership and the claims of other creditors, and when the receiver has made no findings in respect thereto the cause must be remanded.

APPEAL by the Bank of Montgomery, and an intervening factor of Premo & King, Inc., namely, J. N. Rawleigh Company, North Carolina, from *Olive, J.*, 28 May 1962 Civil Term of MONTGOMERY, docketed and argued as Case No. 536 at Fall Term 1962.

Receivership proceeding involving the general liquidating receivership of Premo & King, Inc., a North Carolina insolvent commercial printing corporation with its principal office and place of business in Troy, Montgomery County, North Carolina, heard by Judge Olive

on exceptions by the appellants, and others, to the report of the receiver and his application to make disbursements, distributions, and for discharge.

The reports of the receiver dated 10 January 1962 and 2 May 1962 lack clarity and precision of statement. The controlling facts, as we can best glean them from the reports of the receiver, and from the pleadings, appear in the numbered paragraphs set forth below. The monetary items mentioned in these paragraphs and the ensuing opinion are approximate.

1.  At the time of the appointment of the temporary receiver on 11 August 1961, which appointment was made permanent on 16 September 1961, Premo & King, Inc., was indebted to numerous secured creditors in various sums on sundry obligations which arose before the receivership, and were as follows: (a) $6,749.91 due the Bank of Montgomery on a note originally for $10,000.00, which note was secured by a chattel mortgage on certain articles of machinery used in the business of Premo & King, Inc., and which note and chattel mortgage are dated 15 May 1958, and were recorded 25 April (sic) 1958 in Book Z-76, page 98, Montgomery County Register of Deeds office; (b) $1,548.07 due the Bank of Montgomery on a note originally for $2,000.00, which note was secured by a chattel mortgage on certain printing equipment used in the business of Premo & King, Inc., and which note and chattel mortgage are dated 5 December 1960, and were recorded 7 December 1960 in Book 97, page 359, in the public registry of Montgomery County; (c) $9,940.84 due Peoples Mutual Building and Loan Association, Mt. Gilead, North Carolina, on a note originally for $10,500.00, which note was secured by a deed of trust on certain realty, and which note and deed of trust are dated 20 January 1960, and were recorded the same day in Book 90, page 189, in the public registry of Montgomery County; (d) $139.83 due General Motors Acceptance Corporation on a note originally for $1,660.20 secured by a conditional sales contract on an Opel station wagon, which instruments are dated 18 November 1958, and were recorded 22 November 1958 in Book 81, page 400, public registry of Montgomery County; (e) $420.00 due George R. Keller, Inc., on a note dated 23 February 1959 secured by a conditional sales contract on a Chandler-Price paper cutter; (f) $506.09 balance due Russell Ernest Baum, Inc. on a note originally for $1,685.00 secured by a conditional sales contract on a Baum folder, which instruments are dated 10 December 1956, and were recorded 15 December 1956 in Book Z-64, page 84, public registry of Montgomery County (in another place in the receiver's report the amount due Baum is stated as $442.00, plus interest); (g) $684.40

balance due Davidson Corporation on a note secured by a chattel mortgage on a Davidson Offset Press dated 12 February 1957, and recorded 21 February 1957 in Book Z-66, page 94, public registry of Montgomery County.

2. The receiver allowed all of these seven claims amounting to $19,989.14 as secured and preferred claims to the extent of the security held, and as a general claim for any deficiency.

3. On 13 November 1961 Al Lincoln Buick-Chevrolet, Inc., Troy, North Carolina, filed a claim with the receiver in the amount of $53.50 for storage of an Opel station wagon. The receiver allowed this as a secured and preferred claim to the extent of the security held, and as a general claim for any deficiency.

4. J. N. Rawleigh Company, North Carolina, hereafter called Rawleigh, is engaged in the business of factoring accounts receivable. A copy of the factoring agreement entered into between Rawleigh and Premo & King, Inc. on 15 November 1960 is set forth on more than ten pages of the Record. The receiver in his report to the court as to the allowance of claims dated 10 January 1962 states, Rawleigh "has a factor's lien filed on the 4th day of April, 1961, and filed in Book 100 at page 96, Montgomery County Registry, against certain accounts owing to Premo & King, Inc.; that your Receiver has on hand certain funds which have been collected by him on accounts factored, and that the J. N. Rawleigh Company has a reserve account which is owing to Premo & King, Inc.; that some of these accounts still remain unpaid and upon final settlement, proper adjustments will be made with J. N. Rawleigh Company and Premo & King, Inc." Following this report of the receiver, Rawleigh on 30 April 1962 filed in the cause a petition to the court in substance as follows: The factoring agreement entered into between it and Premo & King, Inc. on 15 November 1960 is attached to its petition, and made a part thereof, and sets forth the terms under which accounts receivable of Premo & King, Inc. were factored by it with Rawleigh. On all accounts assigned to and factored with Rawleigh by Premo & King, Inc., actual notice of the assignment was given on the face of the original invoice to the account debtor, and in addition said Premo & King, Inc., executed a notice of assignment, which is recorded in Book 100 at page 96 of the public registry of Montgomery County. After the execution of the factoring agreement, Premo & King, Inc. assigned numerous of its accounts receivable to Rawleigh, in accordance with the terms of the factoring agreement, for which Premo & King, Inc. was paid by Rawleigh a full consideration as provided for in said factoring agreement. Then there follows a list of 24 specifically named accounts receivable assigned to Rawleigh

by Premo & King, Inc. in the total amount of $1,613.12. The petitioner is informed, believes and therefore alleges that these specifically named accounts receivable have been collected in full by the receiver and the funds are being held by him, although these funds of $1,613.12, pursuant to paragraph First M of the factoring agreement and pursuant to G.S. 44-77 *et seq.*, and specifically G.S. 44-84 (2) (a), are the property of the petitioner and should be turned over to it. Inasmuch as the receiver is holding, according to his report, funds belonging to the petitioner in the amount of $1,613.12, and the petitioner is holding funds belonging to Premo & King, Inc. in the sum of $1,113.79, the receiver is holding funds in the net amount of $499.33 which belong to petitioner.

The receiver in his report and application to make disbursements and distributions addressed to the court dated 2 May 1962 reported: "That your Receiver has in his hands the sum of $1,609.64, being the sums he has collected on accounts, less bank charges of 80¢, from accounts which he is informed and believes were factored by Premo & King, Inc., with J. N. Rawleigh Company, Exhibit 'A' attached hereto includes the sum of $531.32 as an asset and as money available for distribution, being a prorated charge against said sum of $1,609.64 for costs and expenses of administration. That the J. N. Rawleigh Company is holding the sum of $1,243.23 as a reserve which is due the Receiver, and said sum has been included in Exhibit 'A' as an asset and money available for distribution and disbursement."

5. The receiver allowed common unsecured claims against the insolvent corporation in the amount of $45,668.48.

6. The receiver reported to the court that the total amount received by him from the liquidation of the assets of the insolvent corporation amounted to $29,900.88, and came from the following sales and collections:

(1) Sale of certain articles of machinery used in the business of the insolvent corporation for $8,000.50. There was a chattel mortgage on this property securing an indebtedness of the insolvent corporation to the Bank of Montgomery in the amount of $6,749.91, as set forth above.

(2) Sale of certain printing equipment used in the business of the insolvent corporation for $2,900.00. There was a chattel mortgage on this property securing an indebtedness of the insolvent corporation to the Bank of Montgomery in the amount of $1,548.07, as set forth above.

(3) Sale under a deed of trust of a lot and building in the town of Troy for $10,200.00. This deed of trust secured an indebtedness

of the insolvent corporation to Peoples Mutual Building and Loan Association, Mt. Gilead, North Carolina, for $9,940.84, as set forth above.

(4) Sale of an Opel station wagon for $335.00. There was a conditional sales contract on this property securing an indebtedness of the insolvent corporation to General Motors Acceptance Corporation in the sum of $139.83, as set forth above.

(5) Sale of a Chandler-Price paper cutter for $1,750.00. There was a conditional sales contract on this property securing an indebtedness of the insolvent corporation to George R. Keller, Inc. in the amount of $420.00, as set forth above.

(6) Sale of a Baum folder for $525.00. There was a conditional sales contract on this property securing an indebtedness to Russell Ernest Baum in the amount of $506.09, as set forth above.

(7) Sale of a Davidson Offset Press for $2,045.00. There was a chattel mortgage on this property securing an indebtedness of the insolvent corporation to Davidson Corporation in the sum of $684.40, as set forth above.

(8) Sale of unencumbered personal property of the insolvent corporation for $3,171.81.

(9) Collections from the insolvent corporation's accounts receivable in the sum of $973.57—this does not include any accounts receivable set forth in the petition of Rawleigh to the court, and does not include the sum of $1,609.64 which the receiver, in his report of 2 May 1962, states he has collected on accounts receivable which were factored by Premo & King, Inc. with Rawleigh.

7. The receiver reported that the total costs of the administration of the receivership paid by him amounted to $7,553.25. This is itemized in his report as follows: Costs of conserving and sales of personal property, $1,137.69; personal and real property taxes in the amount of $800.56 paid to Montgomery County and to the town of Troy; paid to Lee Houston, accountant, $615.00; paid to receiver for his services, $1,000.00; paid to Charles H. Dorsett, attorney for receiver, $3,750.00; court costs and estimate of future expenses for postage and clerical help, $250.00.

8. The receiver's report shows that out of the $29,900.88 collected by him from the liquidation of the assets of the insolvent corporation he has paid the costs of administration of the receivership amounting to $7,553.25, leaving for distribution on the secured and preferred claims the sum of $22,347.63.

9. The receiver reported that the Peoples Mutual Building and Loan Association should bear $1,053.34 of the total costs of the ad-

ministration of the receivership amounting to $7,553.25, by reason of the fact that out of the $10,200.00 received by him from the sale of the lot and building owned by the insolvent corporation, on which there was a deed of trust in favor of the Peoples Mutual Building and Loan Association, he paid *ad valorem* taxes on this realty due Montgomery County for the years 1960 and 1961 in the amount of $292.81, and paid *ad valorem* taxes due the town of Troy for the year 1961 in the amount of $151.97; paid insurance on this building in the sum of $98.56; and paid 5% on the sales price, to-wit, $510.00, to himself for fees, cost and commission for foreclosure of the said deed of trust—making total payments of $1,053.34. Whereupon, the receiver recommended that the court approve payment to the Building and Loan Association of $9,146.66 ($10,200.00 less $1,053.34) out of the sales price of $10,200.00 on the secured and preferred claim allowed by him of the Building and Loan Association for $9,940.84. Note: The receiver's report shows that real property taxes in the exact amount set forth above in this paragraph were paid by the receiver and charged as part of the costs of administration of the receivership. His report is not clear, but this seems to be a double charge.

10.   The receiver's report deducts from the total amount of assets received by the receiver from the liquidation of the assets of the insolvent corporation amounting to $29,900.88, the amount of $10,200.00 derived from the sale of the building and lot, which leaves the amount of $19,700.88 in the hands of the receiver. The report deducts from the total cost of administration of the receivership amounting to $7,553.25, the amount of $1,053.34, the cost of administration to be borne by Peoples Mutual Building and Loan Association, which leaves a balance of $6,499.91. The receiver reports that this $6,499.91 of expense is to be borne by the $19,700.00 in his hands, which equals 32.992%.

11.   The receiver deducted from the $8,000.50 received by him from the sales of certain articles of machinery belonging to the insolvent corporation, and upon which there was a chattel mortgage securing an indebtedness of the insolvent corporation to the Bank of Montgomery in the amount of $6,749.91, as set forth above, the pro rata share of the cost of administration of the receivership amounting to $2,639.52. This leaves an amount of $5,360.98, which he recommends should be paid on the allowed preferred and secured claim of the Bank of Montgomery in the amount of $6,749.91.

12.   The receiver deducted from the $2,900.00 received by him from the sale of certain printing equipment belonging to the insolvent corporation, and upon which there was a chattel mortgage securing an in-

debtedness of the insolvent corporation to the Bank of Montgomery in the amount of $1,548.07, as set forth above, the pro rata share of the cost of the administration of the receivership amounting to $956.77. From the balance of the proceeds of the sale, the receiver recommends that $1,548.07 be paid to the Bank of Montgomery on its secured claim, and in his report he carries the balance of $395.16 to the surplus account.

13. The receiver deducted from the $335.00 received by him from the sale of the Opel station wagon belonging to the insolvent corporation, and upon which there was a conditional sales contract securing an indebtedness to General Motors Acceptance Corporation in the amount of $139.83, as set forth above, the pro rata share of the cost of administration of the receivership amounting to $110.52. From the balance of the proceeds of sale, he recommends that the secured claim of the General Motors Acceptance Corporation in the amount of $139.83 be paid, and the balance amounting to $84.65 he carries to the surplus account.

14. The receiver deducted from the $1,750.00 received by him from the sale of a Chandler-Price paper cutter belonging to the insolvent corporation, and upon which there was a conditional sales contract securing an indebtedness to George R. Keller, Inc. in the amount of $420.00, as set forth above, the pro rata share of the cost of administration of the receivership amounting to $577.36. From the balance of the proceeds of the sale, he recommends that the secured claim of George R. Keller, Inc., in the amount of $420.00 be paid, and the balance amounting to $752.64 he carries to the surplus account.

15. The receiver deducted from the $525.00 received by him from the sale of a Baum folder belonging to the insolvent corporation, and upon which there was a conditional sales contract securing an indebtedness to Russell Ernest Baum, Inc. in the amount of $506.09, as set forth above, the pro rata share of the cost of administration of the receivership amounting to $173.21. The balance of $351.79 he recommends should be paid to Russell Ernest Baum, Inc. on its secured claim for $506.09.

16. The receiver deducted from the $2,045.00 received by him from the sale of a Davidson Offset Press belonging to the insolvent corporation, and upon which there was a conditional sales contract securing an indebtedness to Davidson Corporation in the amount of $684.40, as set forth above, the pro rata share of the cost of the administration of the receivership amounting to $674.69. From the balance of the proceeds of the sale, he recommends that the secured claim of the

Davidson Corporation in the amount of $684.40 be paid, and the balance amounting to $685.91 he carries to the surplus account.

17. The receiver's report shows that after his recommendation for the payment of the allowed secured and preferred claims above set forth, and after charging the proceeds derived from the sales of the secured property with a pro rata share of the total expenses of the administration of the receivership, as above set forth, he had left in his hands from the proceeds of the sales of the encumbered property a surplus of $1,918.36. Adding to this $1,918.36 the sum of $3,171.81 received by him from the sales of unencumbered personal property, and also adding the sum of $973.57 received by him from collections of the insolvent corporation's accounts receivable which accounts receivable were not factored with Rawleigh, as above set forth, his report shows he had the sum of $6,063.74 for distribution to other preferred creditors of the insolvent corporation. From this $6,063.74 his report shows he deducted as a pro rata part of the total cost of the administration of the receivership the sum of $1,367.64, thus leaving $4,696.10. In his report he adds to this $4,696.10 the sum of $1,243.23, which he reports is the amount due from Rawleigh on reserve, and also adds the sum of $531.32, which he reports as "additional funds prorated and charged to J. N. Rawleigh Company on collection of $1,610.44," thus reporting as the total amount in his hands for distribution to other preferred creditors the amount of $6,470.65. His report shows that from this amount of $6,470.65 the following payments should be made: (1) District Director of Internal Revenue, Greensboro, N. C., for federal taxes, $4,672.47; (2) North Carolina Department of Revenue for State taxes, $262.89; (3) North Carolina Employment Security Commission for all unemployment taxes, $156.64—a total of $5,092.00. The receiver deducts this amount from $6,470.65, which leaves $1,378.65, according to his report for other priority creditors. His report shows that from this $1,378.65 there is due for wages $1,326.97, leaving for postage and clerical aid $51.68.

18. On 3 May 1962 the receiver filed an addendum to his report of 2 May 1962 in substance as follows: He inadvertently omitted the sum of $450.00 paid to Karl H. Vonebeinstein on 26 October 1961 for cleaning, listing and inventorying machinery, assisting in advertising, contacting prospective purchasers, and other general duties, as an item of cost of conserving and sales of property paid. This sum will reduce the amount $1,378.65 as shown on his report of 2 May 1962 as amount available for payment to other priority creditors to the sum of $928.65, and that he distributed this $928.65 as wages to nine

specifically named persons, which leaves no balance on hand for payment to other priority creditors.

19. The receiver in his report states he calculated and included in the total amount of the claims of secured creditors interest on the amounts due on the claims to 11 August 1961, the date of the receivership, but not later.

To the receiver's report exceptions were filed by the Bank of Montgomery and by Rawleigh. These exceptions are in the Record.

The report of the receiver and the exceptions filed thereto came on to be heard by Judge Olive. His judgment recites that exceptions to the receiver's report were also filed by the District Director of Internal Revenue, by Russell Ernest Baum, by the Davidson Corporation, and the Peoples Mutual Building and Loan Association, but these exceptions are not in the Record.

Judge Olive found as a fact and as a matter of law the following (the numbering of paragraphs is ours):

1. "That the Receiver's item of costs of administration and costs of conserving and sales of property, together with the Receiver's fee, attorney's fee, and accountant's fee, were all necessary to the Receivership and the same are hereby in all respects approved and confirmed."

2. "That the actions and proceedings of the said Receiver are correct and according to law and that the priority and the preference in payment of claims appearing in the Report of the Receiver and Application to make Disbursements and Distributions and for Discharge, are according to law and the same is (sic) hereby ratified and confirmed, except as hereinafter provided."

3. "That the pro rata charge assessed by the Receiver against the various claims of preferred creditors for costs of administration is fair and equitable to each creditor and is hereby approved and confirmed, except that it is ordered that the claim of the Federal Government and the claim of the State of North Carolina for taxes shall bear their proportionate share of said costs of administration, and the same shall not include any penalty or interest."

4. "That within ten (10) days, J. N. Rawleigh Company is hereby ordered and directed to deliver to David H. Armstrong, Receiver, the sum of $531.32, representing its proportionate share of the costs of administration in connection with the collection of $1,610.44, and J. N. Rawleigh Company is further ordered and directed to deliver to David H. Armstrong, Receiver, the sum of $1,243.23, representing a reserve fund held by said corporation."

5. "Upon receipt of said sums from J. N. Rawleigh Company, the Receiver is directed to deliver to J. N. Rawleigh Company the sum of $1,610.44, representing the collection of factored accounts owned by J. N. Rawleigh Company."

6. "That the claim for wages reported by the Receiver are (sic) approved and confirmed, but it is hereby ordered that said wages and the amount thereof shall be subject to such deductions as are necessary for social security, withholding tax, and any other legal deductions, and shall bear their pro rata share of the costs of administration."

Whereupon, Judge Olive adjudged and decreed that the actions and proceedings of the receiver are correct and according to law and the same are in all respects ratified, approved and confirmed, and the receiver is hereby ordered and directed to comply with the directions and orders of the court hereinabove set forth.

From the judgment, the Bank of Montgomery and Rawleigh appealed to the Supreme Court. The other creditors did not appeal.

*S. H. McCall, Jr., for appellant Bank of Montgomery.*

*Craige, Brawley, Lucas & Hendrix and Hamilton C. Horton, Jr., for appellant J. N. Rawleigh Company, North Carolina.*

*Charles H. Dorsett for appellee David H. Armstrong, Receiver.*

## APPEAL BY THE BANK OF MONTGOMERY

PARKER, J.    The Bank of Montgomery assigns as error Judge Olive's finding as a fact and as a matter of law "that the Receiver's item of costs of administration and costs of conserving and sales of property, together with the Receiver's fee, attorney's fee, and accountant's fee, were all necessary to the Receivership and the same are hereby in all respects approved and confirmed."

The allowance of the costs of administration of a receivership of an insolvent corporation made by a court affects a substantial right of the creditors, in that it disposes of a part of the assets of the insolvent corporation, and is a reduction to that extent of the amounts to which the creditors are entitled under their claims against it. G.S. 1-507.9; *Bank v. Bank,* 126 N.C. 531, 36 S.E. 39.

Costs of administration of a receivership include, *inter alia,* such items as the following: 1. Court costs in proceedings relating to the receivership; 2. Compensation for the receiver; 3. Reasonable and proper compensation for the receiver's attorney for services which require legal knowledge and skill, and which were rendered to the receiver for the benefit of the receivership; 4. Costs of conserving prop-

erty in receivership; 5. Costs of sales of property in receivership; 6. Premiums for fire insurance on property in receivership; 7. Bookkeeping, clerical, and accounting expense and postage in connection with the administration of the receivership; 8. Payment of all taxes on property, real or personal, in the possession of the receiver which fall due during the time he is in possession as receiver, or which have accrued upon the property in his possession prior to his appointment. *Surety Corp. v. Sharpe*, 236 N.C. 35, 72 S.E. 2d 109; *Stagg v. Nissen Co.*, 208 N.C. 285, 180 S.E. 658; 75 C.J.S., Receivers, sec. 383, Counsel Fees, page 1047; 53 C.J., Receivers, sec. 613, Counsel Fees, page 377; 75, C.J.S., Receivers, sec. 179, Taxes, page 825.

That the amount of the allowance by the superior court of attorney's fees is reviewable by this Court is well settled. *Hood, Comr. of Banks v. Cheshire*, 211 N.C. 103, 189 S.E. 189; *In re Stone*, 176 N.C. 336, 97 S.E. 216. However, the allowance of commissions and counsel fees to a receiver by the superior court is *prima facie* correct, and the Supreme Court will not alter or modify the same unless based on the wrong principle, or clearly inadequate or excessive. *Hood, Comr. of Banks v. Cheshire, supra; Graham v. Carr*, 133 N.C. 449, 45 S.E. 847.

This is said in 75 C.J.S., Receivers, sec. 384, a, page 1049:

> "The trial court fixes the compensation, if any, to be allowed for the services of an attorney for a receiver. While the court is vested with discretion in the matter, and its action is presumptively correct, nevertheless its discretion must be properly exercised and not abused, and the matter is discretionary only in the sense that there are no fixed rules for determining the proper amount, and not in the sense that the court is at liberty to award more than fair and reasonable compensation, nor less than such compensation. Bills for counsel fees should be carefully scrutinized by the court or chancellor, and not allowed as a matter of course. The allowance must rest on facts showing actual benefits. A certain esprit de corps among attorneys which prevents them from interposing objections to the allowance of fees may make it somewhat awkward for the court to determine applications for the allowance of fees in receivership cases."

The receiver's report shows, as set forth above, that the total amount received by him from the liquidation of the assets of the insolvent corporation amounted to $29,900.88, and $10,200.00 of this amount was received by the receiver from the foreclosure of a deed of trust on a lot and building in favor of Peoples Mutual Building and Loan Association. This does not include the sum of $1,609.64 which, in his

report of 2 May 1962, he states he has collected on accounts receivable factored by the insolvent corporation with Rawleigh. In his report of 2 May 1962 he asked the court to approve costs of administration of the receivership amounting to $7,553.25. In an addendum to this report dated 3 May 1962 he listed an additional cost of administration in the sum of $450.00. The total costs of the administration of the receivership approved by Judge Olive amounted to $8,003.25, which is more than 26% of the total amount received by the receiver from the liquidation of the assets of the insolvent corporation, excluding the sum of $1,609.64 collected on accounts receivable factored by the insolvent corporation with Rawleigh. The $8,003.25 of administration costs are itemized in the receiver's report as follows: 1. Costs of conserving and sales of personal property, $1,137.69, and included in the costs of said sales of property of the receivership is the amount of $81.97 for long distance telephone calls by counsel for the receiver; 2. Personal and real property taxes in the amount of $800.56; 3. Paid to Lee Houston, accountant, $615.00; 4. Paid to receiver for his services, $1,000.00; 5. Paid to Charles H. Dorsett, attorney for receiver, $3,750.00; 6. Court costs and estimate of future expenses for postage and clerical help, $250.00; 7. Paid to Karl H. Vonebeinstein for services rendered to receivership, $450.00. In addition, the receiver receives under Judge Olive's order $510.00 for the foreclosure of the deed of trust above set forth.

The only evidence in the Record before us as to the services rendered by his attorney is set forth in his report of 2 May 1962 as follows:

"9. That your Receiver further reports to the Court that the administration of this Receivership has consisted of numerous sales and resales necessarily involving the contacting of many prospective purchasers and the showing of the property to the same at all hours of the day and night, and the accounting and bookkeeping connected therewith has been most involved, complicated and time consuming; that most of the work in connection with the foregoing has been performed by Charles H. Dorsett, attorney; that under the provisions of G.S. 1-507.9, your Receiver would be entitled to a 5% commission upon receipts and disbursements, which would amount to $2,990.00; that your Receiver respectfully requests the Court that a balance of the fees to which the Receiver would be entitled to over $1,000.00 be applied against the fees to Charles H. Dorsett, Attorney."

It is to be noted that G.S. 1-507.9 does not state that the receiver is entitled to a five per cent commission upon receipts and disburse-

ments, but reads in part as follows, "the court shall allow a reasonable compensation to the receiver for his services, *not to exceed five per cent upon receipts and disbursements.*" (Emphasis supplied.)

The contacting of purchasers, the showing of property for sale, the sales and resales of property, and the accounting and bookkeeping in respect to the administration of the receivership required no legal knowledge and skill, and are the performance of ordinary duties, which may and should be performed by the receiver himself, and are not the subject of an allowance of counsel fees. *Henry v. Henry,* 103 Ala. 582, 15 So. 916; *Saulsbury v. Lady Ensley Coal, Iron & Railroad Co.,* 110 Ala. 585, 20 So. 72, where the Court held a receiver is not entitled to allowance for the services of an attorney in hunting up and taking into possession the property belonging to the estate, since it is the personal duty of the receiver to look after such matters; *Deputy v. Delmar Lumber Mfg. Co.,* 10 Del. Ch. 101, 85 A. 669; *Olson v. State Bank,* 72 Minn. 320, 75 N.W. 378; *Conover v. West Jersey Mortgage Co.,* 96 N.J. Eq. 441, 126 A. 855; *Society for Relief of Destitute Children v. McDaniel,* 148 N.Y.S. 951; *Elsesser v. Pfleging,* 254 App. Div. 753, 4 N.Y.S. 2d 275; *Wilkinson v. Washington Trust Co.,* 102 F. 28; 75 C.J.S., Receivers, sec. 383, Counsel Fees, b, page 1048. The receiver states accounting and bookkeeping in respect to the receivership was most involved, and recommended, and Judge Olive confirmed, a payment to Lee Houston, an accountant, of $615.00 for his services rendered to the receivership.

In *Conover v. West Jersey Mortgage Co., supra,* the Court said: "And while a receiver should be allowed reasonable counsel fees for legal services rendered necessary in the discharge of his duties, he will not be allowed fees paid to counsel for services which are the ordinary duties he is presumed to know how to perform." In *Olson v. State Bank, supra,* the Court said: "And, when employing counsel, the receiver must also remember that it is his duty to perform such duties as any ordinarily competent businessman is presumed to be capable of performing. These are his duties, and he is paid therefor. It is only for services requiring special legal skill that he will be allowed counsel fees."

In *Wilkinson v. Washington Trust Co., supra,* the Court said:

> "There was no error in the order of the court striking out the $750 paid by the appellant for the services of attorneys in preparing and presenting his reports as receiver and master. It is one of the indispensable personal duties of a receiver and of a master to make a report of his acts, and of his receipts and dis-

bursements, to the court which appoints him. If he is incapable of keeping accounts and of reporting his receipts and disbursements, he ought not to accept the appointment. But if he does accept it, and his reports, like those in hand, involve nothing more than a simple narrative of his acts, and an account of his receipts and disbursements, he cannot be permitted to receive compensation for the discharge of these, his personal duties as receiver, and to charge the trust with moneys expended by him to hire others to discharge them for him. Such allowances would pay twice for the same services. In ordinary cases the making and presentation to the court of reports of the acts, receipts, and disbursements of receivers and masters is one of their indispensable duties. The compensation allowed them as receivers or masters pays them for this service, and they cannot be allowed disbursements which they may have made to hire attorneys or others to discharge these duties for them, because such allowances would effect two payments for the same service, and because cestuis que trustent are always entitled to a report of the doings of their trustee, without expense or charge to them."

There is nothing in the Record before us to indicate there was any litigation or dispute in respect to the collection of the assets of the receivership, or anything to show the amount of professional time necessarily required for the services of the receiver's counsel, or the extent or value of his legal services rendered to the receiver.

As said by Chief Judge Boyd in *Friedenwald v. Burke*, 122 Md. 156, 164, 89 A. 424, 427:

"One of the most delicate duties courts are called upon to perform is that of fixing the amount of compensation of attorneys in cases in which they are entitled to be paid out of an estate or fund before the court. It would be difficult to lay down a general rule, to be followed in all cases where such compensation is to be allowed, beyond saying that it must be reasonable and fair."

We are confident that the counsel for the receiver performed his professional services in the receivership ably and well, but considering all the pertinent facts and circumstances, the moderate amount of the assets derived from the liquidation of the assets of the insolvent corporation, and its complete insolvency with nothing to be paid to the unsecured creditors, and not enough apparently to pay the preferred creditors in full, it is our opinion, and we so hold, that the allowance by Judge Olive of $3,750.00 as counsel fees to the receiver's attorney

is clearly excessive, and we feel it our duty to reduce the sum allowed to receiver's counsel to $1,000.00. This reduction is in accord with former decisions of this Court: *Bank v. Bank, supra,* where it was held that there was error in that part of the court's order allowing commissions in the amount of $2,350.00 because they were clearly excessive, and the amount was reduced; *In re Stone, supra,* where services rendered by a lawyer to an infant were reduced from $1,000.00 to $500.00; *Outland v. Outland,* 118 N.C. 138, 23 S.E. 972, where this Court held that an allowance of $200.00 as an attorney's fee in an action by the next friend of an idiot to have land charged with his support sold declared subject to the lien, etc., is excessive and reduced the fee to $100.00; *Moore v. Shields,* 69 N.C. 50, where an attorney's fee paid by a guardian was held excessive and reduced to $25.00. See also *Richardson v. Tyson,* 110 Wis. 572; *Smith v. Smith,* 69 Ill. 308, where an attorney's fee of $3,500.00 was reduced to $1,000.00.

The part of Judge Olive's judgment approving and confirming the receiver's report in respect to the costs of the administration of the receivership is affirmed, with the exception that the fees allowed counsel for the receiver are reduced from $3,750.00 to $1,000.00, and with the further exception that the superior court shall investigate and determine whether or not the receiver's report shows there has been a double charge in the costs of administration of the receivership of taxes paid by the receiver to Montgomery County and the town of Troy—a matter not clear from the Record before us.

The Bank of Montgomery further assigns as error that Judge Olive approved the report of the receiver to the effect that it was entitled to interest on its claims against the insolvent corporation only to the date of the appointment of the receiver.

When the Bank of Montgomery took the two above-mentioned chattel mortgages from Premo & King, Inc. in May 1958 and in December 1960, prior to the date of the appointment of the receiver on 11 August 1961, which chattel mortgages secured the two debts of Premo & King, Inc. to the Bank of Montgomery by a specific lien on specific property, and caused these chattel mortgages to be registered in the public registry of Montgomery County, the county in which its debtor resided and had its principal place of business, it acquired property rights in the personal property specified in and covered by the chattel mortgages. G.S. 47-20; *Surety Corp. v. Sharpe, supra; Odom v. Clark,* 146 N.C. 544, 60 S.E. 513. In the very nature of things, the receiver took the property of Premo & King, Inc., subject to the lien of these two chattel mortgages, which existed at the time of his appointment. *Surety Corp. v. Sharpe, supra; Vanderwal v. Dairy Co.,*

200 N.C. 314, 156 S.E. 512; *Acceptance Corp. v. Mayberry,* 195 N.C. 508, 142 S.E. 767.

The liens of these chattel mortgages constituted valuable property rights of the Bank of Montgomery, and this became "trebly true," when Premo & King, Inc. was placed in receivership. "A primary purpose for the receivership of an insolvent private concern owing no duty to the public is the preservation of the rights of lien creditors as they exist at the time of the appointment of the receiver." *Surety Corp. v. Sharpe, supra.*

It seems clear from the Record that the insolvent corporation was indebted to the Bank of Montgomery on interest-bearing obligations. The receiver in his report states he calculated and included in the total amount of the claims of secured creditors interest on the amounts due on the claims to 11 August 1961, the date of the receivership, but not later. The receiver allowed one claim of the Bank of Montgomery for $6,749.91—this included interest to 11 August 1961. The pledged property securing this loan was sold by the receiver for $8,000.50, thereby resulting in a surplus of $1,250.59 over the allowed claim, with interest to 11 August 1961. The receiver allowed the other claim of the Bank of Montgomery for $1,548.07—this included interest to 11 August 1961. The pledged property securing this loan was sold by the receiver for $2,900.00, thereby resulting in a surplus of $1,351.93 over the allowed claim, with interest to 11 August 1961. It is manifest that the security given by Premo & King, Inc. to the Bank of Montgomery was given to secure the payment of interest as well as principal of its debts to the Bank of Montgomery.

This Court said in *Moore v. R.R.,* 173 N.C. 726, 92 S.E. 361: "Under the law of this State the appointment of a receiver for a corporation does not have the effect *eo instanti* to stop the interest upon all of its interest-bearing obligations." This Court in the *Moore* case held that the appointment of a receiver for a railroad company did not stop the running of interest on claims for labor and material furnished in the construction of the road, which were a lien on the property and entitled to a preference over other indebtedness. This Court followed the decision in *American Iron & S. Mfg. Co. v. Seaboard A.L.R. Co.,* 233 U.S. 261, 58 L. Ed. 949, and quoted from it as follows: "For, manifestly, the law does not contemplate that either the debtor or the trustees can, by securing the appointment of a receiver, stop the running of interest on claims of the highest dignity."

The order appointing the permanent receiver enjoined all persons, firms, and corporations "from selling under foreclosure of any mortgage or deed of trust any real estate or personal property which

constitutes a part of the property and assets of the said defendant corporation, whether executed by said corporation or assumed by it in the purchase of property, except by permission first obtained from this Court." The receiver cared for and sold property for $8,000.50 upon which there was a chattel mortgage to secure an indebtedness of the insolvent corporation to the Bank of Montgomery in the amount of $6,749.91—this includes interest to the date of the appointment of the receiver. After deducting from the sale price of $8,000.50 the Bank of Montgomery's fair pro rata share of the costs and expenses of the administration of the receivership as modified above (G.S. 1-507.9; *Wood v. Woodbury & Pace, Inc.*, 217 N.C. 356, 8 S.E. 2d 240), the receiver will pay to the Bank of Montgomery $6,749.91, if there is enough left for that purpose, or if not enough, what is left; and if enough is left to pay the $6,749.91 in full and then a surplus remains, then the receiver will pay to the Bank of Montgomery interest on the amount of its claim to the date of the order of disbursement, or if not enough is left to pay the interest to the date of the order of disbursement, to pay what part of it can be paid. If interest can be paid on the claim of the Bank of Montgomery after the appointment of the receiver, the interest is to be figured on the amount of the claim as it was allowed before interest was added to the date of the appointment of the receiver. In other words, no interest is to be paid on interest. No surplus, if any, from the sale in the amount of $8,000.50 can be turned into the general fund of the receivership, unless the allowed claim of the Bank of Montgomery can be paid in full, with interest on its claim to the date of the order of disbursement. The same is applicable to the sale by the receiver for $2,900.00 of property upon which there was the lien of a chattel mortgage in favor of the Bank of Montgomery. In other words, a secured creditor may collect all of its principal and interest *as far as his security suffices. Moore v. R.R., supra; American Iron & S. Mfg. Co. v. Seaboard A.L.R. Co., supra; Spring Coal Co. v. Keech,* 239 F. 48, L.R.A. 1917D, 1152, and annotation following the case in L.R.A.; *Georgia, Florida & Alabama R. Co. v. Bankers Trust Co.,* 170 F. 2d 733; *Board of Com'rs of Sweetwater County, Wyo. v. Bernardin,* 74 F. 2d 809, cert. denied 295 U.S. 731, 79 L. Ed. 1680; *Leach v. Sanborn State Bank,* 210 Iowa 613, 231 N.W. 497, 69 A.L.R. 1206; *BancoKentucky Co.'s Receiver v. National Bank of Kentucky's Receiver,* 281 Ky. 784, 137 S.W. 2d 357, 378; *Metropolitan Life Ins. Co. v. Richard Gill Co., Texas Civil App.,* 303 S.W. 2d 501; 75 C.J.S., Receivers, sec. 270, page 905. It has been generally held that where in the administration of a bankrupt's estate the sale of pledged property by the trustee realizes more than enough to

satisfy the principal of the secured claim, any surplus from the sale of the secured claim should be applied to the satisfaction of after-accruing interest on the secured claim before being turned into the general funds of the estate. Anno. 27 A.L.R. 2d 592, where a multitude of cases is cited in support of the text.

The Bank of Montgomery further assigns as error that Judge Olive approved the report of the receiver to the effect "that the pro rata charge assessed by the Receiver against the various claims of preferred creditors for costs of administration is fair and equitable to each creditor," with the exception that later on in the judgment the judge found as a fact and as a matter of law "that the claims for wages reported by the Receiver* * *shall bear their pro rata share of the costs of administration."

This Court said in *Wood v. Woodbury & Page, Inc., supra*: "Ordinarily, it is the rule with us, when a receivership inures to his benefit, to hold that a lienholder should pay a fair share of the administrative expenses, where the receiver has managed, cared for and sold the encumbered property."

The lot and building upon which there was the lien of a deed of trust in favor of Peoples Mutual Building and Loan Association was sold by the receiver for $10,200.00. The receiver fixed as a pro rata charge of the costs of the administration of the receivership against this amount the sum of $1,053.00—a rate of a little less than 10%—as set forth above in detail, and the judge approved it. The receiver realized in the liquidation of the remainder of the assets of the insolvent corporation $19,700.88—excluding the amount of $1,609.64 collected by him on accounts factored with Rawleigh. The receiver reports that he fixed pro rata charges for the costs of the administration of the receivership against the $19,700.88 of the assets of the insolvent corporation at the rate of 32.992%, and the judge confirmed this. Such a difference cannot be sustained as against the Bank of Montgomery on the Record before us. The charges for the sale of the house and lot for $10,200.00 will be added to the costs of administration as modified in this opinion, and then the Bank of Montgomery will pay a fair pro rata share of the administrative expenses of the receivership, based upon the sum of $29,900.88, the total amount received by the receiver from the liquidation of the assets of the insolvent corporation, with the exception of the sum of $1,609.64 which the receiver collected on accounts receivable factored with Rawleigh.

The non-appealing creditors have acquiesced in the order of distribution. "As a general rule, an appellate court will not grant relief to a party who has not appealed or complained of the judgment."

*Surety Corp. v. Sharpe, supra.* See *Queen v. Jarrett,* 258 N.C. 405, 128 S.E. 2d 894. However, the reduction in the fee allowed counsel for the receiver will necessarily give some relief to some of the non-appealing preferred creditors. Note, no part of the fee allowed the receiver's counsel was charged to Peoples Mutual Building and Loan Association.

The order of distribution on the appeal of the Bank of Montgomery is modified to conform to this opinion. As thus modified it is affirmed.

APPEAL BY J. N. RAWLEIGH COMPANY, NORTH CAROLINA

Rawleigh assigns as error the failure of the judge to pass upon its verified petition, and his order that it shall deliver to the receiver $531.22, representing its proportionate share of the costs of the administration of the receivership, and the sum of $1,243.23, representing a reserve fund held by Rawleigh, as a prerequisite to the receiver paying to it $1,610.44, representing the collection of factored accounts owned by Rawleigh.

The General Assembly of North Carolina enacted an ASSIGNMENT OF ACCOUNTS RECEIVABLE AND LIENS THEREON ACT, which is set forth in G.S. 44-77 *et seq.* G.S. 44-77, (3), states " 'Assignment' includes an assignment for value as security and the creation by agreement of a lien on an account." G.S. 44-78 and 44-80 set forth the means by which the assignee of accounts receivable becomes protected as against others. G.S. 44-80, (2), reads: "When an assignment becomes protected, it shall be deemed to have been fully perfected at that time, and no bona fide purchaser from the assignor, no creditor of any kind of the assignor, and no other assignee or transferee of the assignor, in any event shall have, or be deemed to have, acquired any right in the account so transferred or in the proceeds thereof, or in any obligation substituted therefor, superior to the rights of the protected assignee therein." G.S. 44-84, (2), reads: "The assignor shall hold in trust for the assignee* * *."

The case of *In re Battery King Manufacturing Company, Inc.,* 240 N.C. 586, 83 S.E. 2d 490, involved a receivership. In that case, shortly prior to the receivership, the insolvent corporation delivered to Burlington Mills fourteen batteries, and the account receivable in the amount of $388.00 representing the delivery was assigned to Rawleigh-Moses, who immediately made payment to the insolvent corporation for the account. Upon delivery of the batteries to Burlington Mills, together with two copies of the invoice, one of which was stamped with notice of assignment of the account receivable, the receiving clerk for Burlington Mills refused to accept the shipment on the ground that it contained improper batteries. The returned batteries

were in the possession of the insolvent corporation when the receiver was appointed. Later the identical batteries were sold by the receiver to Burlington Mills for the reduced sum of $364.88. The Court stated:

> "The foregoing facts bring the claim of Rawleigh-Moses within the provisions of the Returned Goods section of the Assignment of Accounts Receivable Act, G.S. 44-84, under which the receiver was required to hold in trust for Rawleigh-Moses the goods which gave rise to this assigned account receivable. This being so, the purchase money received from the sale of the goods was impressed with a trust in favor of Rawleigh-Moses, and it is so ordered."

The petition filed by Rawleigh in the cause states, *inter alia*, that on all accounts assigned to and factored with Rawleigh by the insolvent corporation actual notice of the assignment was given on the face of the original invoice to the account debtor, and in addition Premo & King, Inc. executed a notice of assignment, which is recorded in Book 100 at page 96 of the public registry of Montgomery County. The petition further states that Rawleigh paid Premo & King, Inc. a full consideration for all the accounts receivable assigned to it by Premo & King, Inc.

The receiver's report in failing to state the facts in respect to the accounts receivable factored with Rawleigh, which he collected, and the judgment approving the report in respect to Rawleigh, do not give us facts sufficient accurately and safely to pass on Rawleigh's rights. Consequently, on Rawleigh's appeal the case will be remanded to the superior court that it may find with exactitude the facts in respect to the accounts receivable factored with Rawleigh, which the receiver collected, and then determine Rawleigh's rights according to the applicable law.

On Rawleigh's appeal the case is
Remanded.